Argued February 6, reversed June 12,
petition for rehearing denied July 31, 1979

STATE OF OREGON, *Respondent,*

*v.*

WILLIAM EARL ROPER, *Petitioner.*

(TC C 7704-05664, CA 9261, SC 25867)

595 P2d 1247

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General.

LINDE, J.

## LINDE, J.

The problem before us concerns the proof required to establish venue in a conspiracy case.

◼◼ Defendant was one of six persons accused by the Multnomah County grand jury in a single indictment of conspiracy to commit first degree robbery. The relevant portion of the indictment charged that

"[t]he said defendants between March 2, 1977 and March 10, 1977, in the County of Multnomah, State of Oregon, did unlawfully, with the intent that conduct constituting the crime of Robbery in the First Degree punishable as a Felony be performed, agree with each other to cause and engage in the performance of the following conduct, to-wit: threatening the immediate use of physical force upon Mayciel Reagan while armed with deadly weapons, while in the course of committing theft of lawful money of the United States of America, with the intent of preventing resistance to their taking of the said property, . . ."

In defendant's separate trial before a jury in Multnomah County, at the close of the state's case, defendant moved for a judgment of acquittal because the evidence showed that defendant agreed to the robbery, if at all, in Clackamas County rather than in Multnomah County as charged in the indictment.[1] The trial court denied the motion on the ground that, although the agreement was made in Clackamas County, the conspiracy "continued" through the subsequent attempt to commit the intended robbery in Multnomah County.[2] On appeal from judgment rendered upon the

---

[1] A second ground for defendant's motion and subsequent assignment of error in the Court of Appeals was lack of any evidence of an agreement to rob or threaten Mayciel Reagan, as charged in the indictment. Since defendant did not refer to this ground in his petition for review, we express no view on it.

[2] In ruling on the motion, the trial court referred to ORS 161.465(1) as providing that a conspiracy "is a continuing course of conduct" terminating when its object is completed or it is abandoned. However, the court failed to note that the section is limited by its opening words: "For the purpose of

jury's verdict of guilty, defendant assigned as errors the denial of his motion for acquittal and also the exclusion of certain defense testimony. The Court of Appeals affirmed, 34 Or App 273, 578 P2d 479 (1978), and we allowed review. We now hold that when an indictment charges that a criminal agreement was made in a certain county, a conviction cannot rest on proof that the agreement was made in a different county and only subsequent acts in pursuance of the agreement occurred in the county where the making of the agreement is alleged.

In Oregon venue in criminal cases is prescribed by the constitution. First among the rights of the accused in criminal prosecutions, article I, section 11 states:

> "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; . . ."

This provision plainly makes it necessary to determine the county or counties where the offense was committed with which the defendant is charged.

The offense which the present defendant was accused of committing was not a robbery but an unlawful agreement "to cause and engage in" conduct constituting the crime of robbery. The statutes pertinent to the problem were enacted as part of the revision of the substantive and procedural criminal

---

application of ORS 131.125," *i.e.,* for the purpose of the statute of limitations. When the legislature has specifically indicated the limited purpose of thus defining the temporal duration of a conspiracy, we will not extend ORS 161.465 to a different issue.

In contrast to its earlier ruling, the court subsequently instructed the jury:

> "The crime of conspiracy is complete when the conspiratorial agreement is entered into. The unlawful agreement and not its accomplishment is the gist of the essence of the crime. Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy, if such act or said declaration is in furtherance of the objective of the conspiracy."

law in 1971 and 1973. In 1971, the legislative assembly defined the crime of conspiracy as follows:

> "A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." ORS 161.450(1).

Although this and other sections relating to conspiracy were based on the American Law Institute's Model Penal Code, the Criminal Law Revision Commission and the legislature departed from the Model Penal Code and from prior Oregon law by eliminating the previous requirement of ORS 161.320 (repealed, 1971) that "one or more of the parties does [an] act to effect the object of the conspiracy" before the conspiracy would ripen into a crime. Instead, the legislature deliberately provided that the agreement without more constitutes the crime of conspiracy.

The statutes governing venue were enacted as part of the procedural revision of 1973. Generally, "criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred." ORS 131.305. ORS 131.315 provides a number of special rules. If the "conduct" or "results constituting elements of an offense" occur in more than one county, the trial may be in any of these counties. ORS 131.315(1). If the agreement charged in this case was not made in Multnomah County, the foregoing sections would not allow venue in that county, since the "result" of the agreement is not an element of the crime of conspiracy.

ORS 131.315(9) is addressed specifically to venue in conspiracy cases. It provides:

> "If the offense is criminal conspiracy, trial of the offense may be held in any county in which any act or agreement that is an element of the offense occurs."

Defendant relies on this subsection to place venue where the evidence showed defendant to have entered into the agreement to undertake the proposed robbery, because after the 1971 redefinition of conspiracy no act other than the agreement itself was an element of the offense.

The history of ORS 131.315(9) shows that the Criminal Law Revision Commission was aware of this point. The subsection resulted from an earlier version covering all three inchoate offenses of attempt, solicitation, and conspiracy and placing venue where "any act or agreement that is an element of the offense is committed." In the commission's discussion there was criticism of the phrasing that an "agreement . . . is committed." At the same time, Attorney General Lee Johnson, a member of the commission, pointed out that the word "act" in the draft could not refer to an element in the offense of conspiracy as revised in 1971 and recommended that the section be divided.[3] The section was divided by placing attempt or solicitation into ORS 131.315(8) and conspiracy into ORS 131.315(9), but in the process the word "act," which

---

[3] The transcription of the tape of the commission's meeting includes the following exchange just before the decision to divide the proposed subsections:

"Mr. Johnson: 'No, it says any act that is an element of the offense. An overt act is not an element of the offense of conspiracy.

Judge Burns: 'Well, I don't agree with that. An act may be an element of the offense of conspiracy.

[Johnson]: 'In a conspiracy, all you have to prove is the agreement.

Judge Burns: 'Well, but, by showing the activities of the conspirators, in most cases you will be demonstrating the existence of the conspiracy.

Mr. Johnson: 'That's evidentiary. But that isn't an element of the offense. It seems to me that really, (8) ought to be subdivided into two sections, one dealing with attempt and another dealing with conspiracy.

Mr. Paillette: 'Well, I don't think that—It certainly wouldn't hurt the intent of the draft—what do you want to do—

Johnson: 'Well, I think the section needs to be rewritten as you have indicated to the committee.

Judge Burns: 'As much as I'm surprised to find myself on the same side as the Attorney General, I move that the staff be directed to separate the two—Redraft (8) to have one section covering attempt and solicitation and another covering conspiracy."

was appropriate as an element in the inchoate offense of attempt, remained in both subsections (8) and (9).

The Court of Appeals concluded that "applying the language of ORS 131.315(9) literally, venue could lie only in Clackamas County." Since subsection (9) thus appeared to add nothing to the general venue provision of ORS 131.305, the court speculated that maybe a broader provision for conspiracy was intended, "but if that was the intent, the language was ill chosen." 34 Or App at 276. However, the court then proceeded to find that venue could be laid in Multnomah County under another subsection for inchoate offenses, ORS 131.315(10). This subsection provides:

> "A person who in one county commits an inchoate offense that results in the commission of an offense by another person in another county, or who commits the crime of hindering prosecution of the principal offense, may be tried in either county."

But this application of ORS 131.315(10) would be incompatible with article I, section 11 of the constitution, *supra,* whenever the action of the other person in the other county is not an element of the offense charged against the defendant, a problem which the Court of Appeals did not address. We conclude that subsection 10 can properly be applied only when the actual occurrence of the acts or other events in the county of trial is part of the offense with which the defendant is charged.[4]

The state concedes that defendant joined the conspiracy at a meeting on March 3, 1977, in the home of one of the other defendants in Clackamas County. However, the state contends that there is evidence that a conspiracy among some of the other defendants had already been formed the previous night in a Portland bar, in Multnomah County, so that the meeting in the Clackamas County house only added

---

[4] Of course, it is quite possible that an inchoate offense, including the communications constituting a solicitation or a conspiracy, may occur in more than one county, whether by correspondence, telephone calls, or a series of conversations.

new members to an existing conspiracy. We do not agree that a prior agreement between other coconspirators can make this defendant's offense one committed in Multnomah County.

The state also argued in a memorandum opposing the petition for review that in removing the previous requirement of an overt act from the definition of conspiracy, "the legislature intended to facilitate conspiracy prosecutions by removing needless impediments to the proof of the crime," and that limiting venue to the place of the agreement will hinder rather than facilitate such prosecutions. But the state cannot have it both ways. As long as the offense requires both the agreement and an act to effect the object of the agreement, venue can be laid in the county where either of these occur, because there is no crime until both occur.[5] When the legislature chooses to ease the burden of prosecution by making the agreement alone the conspiracy, it also makes the subsequent acts and their location immaterial as far as that offense is concerned.

More than a constitutional technicality is involved. On the state's theory, one or more persons could be brought from their homes clear across the state to stand trial before a jury of a distant community on someone's accusation that they had planned a crime which would have its effect in that community, although the crime was never actually attempted and they had never set foot in the county where they were to be tried. On that theory, an English King could have brought colonists across an ocean for trial on charges of conspiring to withhold taxes to the injury of the

---

[5] This would have been the rule if the revision had followed the Model Penal Code with respect to conspiracy. Section 5.03(4)(b) of the code proposes this provision for venue:

"(i) no defendant shall be charged with a conspiracy in any county [parish or district] other than one in which he entered into such conspiracy or in which an overt act pursuant to such conspiracy was done by him or by a person with whom he conspired . . ."

ALI Model Penal Code (1962).

royal revenues. *See* Declaration and Resolves of the First Continental Congress, October 14, 1774, in Perry & Cooper, *Sources of Our Liberties,* 272, 288 (1959), Declaration of Independence, *id.* at 314, 320.

■ That was the concern which led to the inclusion of provisions like the first clause of article I, section 11 in the constitutions of the newly independent states. These provisions have sometimes been critized as unduly restrictive for modern conditions. *See, e.g.,* Lorensen, *Criminal Venue in West Virginia,* 70 W Va L Rev 163 (1968). Oregon belongs among the one-third or fewer of the states that specify trial "in the county" or by a jury "of the county" in which the crime was committed, the majority employing broader or vaguer terms. *See* Blume, *The Place of Trial of Criminal Cases,* 43 Mich L Rev 59 (1944). But if Oregon's more restrictive guarantee of trial "in the county in which the offense shall have been committed" is to be changed, the change cannot be made by this court.

In the present case, as the Court of Appeals said, there was some evidence that defendant actually participated in the robbery in Multnomah County. Thus the state had two choices: it could prosecute him in Multnomah County as a party to the robbery itself under ORS 161.150 or 161.155,[6] or it could prosecute him in Clackamas County for joining the conspiracy in

---

[6] ORS 161.150:

"A person is guilty of a crime if it is committed by his own conduct or by the conduct of another person for which he is criminally liable, or both."

ORS 161.155:

"A person is criminally liable for the conduct of another person constituting a crime if:

"(1) He is made criminally liable by the statute defining the crime; or

"(2) With the intent to promote or facilitate the commission of the crime he:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort he is legally required to make."

that county. Instead, the indictment charged a criminal agreement in Multnomah County. Since the proof showed that the offense charged, the agreement, occurred in Clackamas County, defendant's motion for judgment of acquittal on that charge should have been granted.

Reversed.