Argued and submitted March 30; resubmitted
in banc October 7, affirmed October 12,
reconsideration denied December 4, 1981,
petition for review denied February 3, 1982 (292 Or 568)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL ALLEN MATHIE,
*Appellant.*

## (No. 18-989B, CA 18598)

634 P2d 799

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

GILLETTE, J.

RICHARDSON, J., dissenting opinion.

## GILLETTE, J.

Defendant appeals his conviction after jury trial of criminal conspiracy to commit burglary in the first degree. ORS 161.450; ORS 164.225.[1] He assigns as error the denial of his motion for judgment of acquittal. He contends that the state's evidence failed to establish that he entered into (1) any criminal agreement; or (2) any agreement in Washington County where he was indicted; or (3) any agreement to commit assault in the fourth degree, the crime the indictment alleged the conspirators intended to commit after the unlawful entry.[2] We find it necessary to discuss

---

[1] ORS 161.450 provides:

"(1) A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.

"(2) Criminal conspiracy is a:

"(a) Class A felony if an object of the conspiracy is commission of murder, treason or a Class A felony.

"(b) Class B felony if an object of the conspiracy is commission of a Class B felony.

"(c) Class C felony if an object of the conspiracy is commission of a Class C felony.

"(d) Class A misdemeanor if an object of the conspiracy is commission of a Class A misdemeanor."

ORS 164.225(1) provides:

"A person commits the crime of burglary in the first degree if he violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom he:

"(a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or

"(b) Causes or attempts to cause physical injury to any person; or

"(c) Uses or threatens to use a dangerous weapon."

[2] Defendant was indicted in Count I for criminal conspiracy to commit burglary in the first degree. In particular the indictment alleged:

"That the above-named defendant(s) on or about the 23 day of February 1979, in Washington County, Oregon, did unlawfully, with the intent that conduct constituting the crime of burglary in the first degree, punishable as a felony, be performed, agree with each other and with Steven Andrew Allen to cause the performance of the following conduct, to-wit: the unlawful entry and remaining in a building, to-wit: a dwelling located at 13550 SW Evergreen, with the intent to commit the crime of custodial interference, assault and harassment therein."

only the second contention. We affirm. Because defendant was convicted after jury trial, we review the state's evidence to determine

> "'* * * whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. * * *'" *State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1980), quoting *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 L Ed2d 560, 573 (1979). (Emphasis in original.)

Our approach to application of this legal standard is stated in *State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974):

> "* * * In deciding whether the circumstances are sufficient to entitle the jury to find beyond a reasonable doubt that defendant was guilty, we must remember that it is not proper for us to hold that there is a reasonable doubt because of conflicts in the evidence. After a verdict of guilt, or in deciding whether the case should be submitted to the jury, such conflicts must be treated as if they had been decided in the State's favor. After the conflicts have been so decided, we take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt. *State v. Zauner,* 250 Or 105, 110, 441 P2d 85 (1968); *State v. Dennis,* 177 Or 73, 78, 159 P2d 838, 161 P2d 670 (1945). Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury to so find. *State v. Zauner, supra."* 269 Or at 137-38.

*See State v. Mellinger,* 52 Or App 21, 627 P2d 897 (1981); *State v. Williams,* 49 Or App 893, 621 P2d 621 (1980).

We summarize the facts in the light most favorable to the state: On February 23, 1979, Burt Szelap attempted to take his child and personal belongings from a Beaverton residence occupied by the mother of his child, Deborah Dean, and Ms. Dean's brother. The residence was in Washington County. Ms. Dean and Szelap had lived together for

---

The trial court submitted to the jury only assault in the fourth degree as the crime underlying the alleged burglary.

Defendant was indicted in Count II for conspiracy to commit custodial interference in the first degree. This count was withdrawn from the jury's consideration on defendant's motion.

a period of time up to August, 1978, when she moved to her brother's home. The couple had never married, and neither had sought to obtain formal legal custody of their daughter.

A few days prior to February 23, 1979, two men, Steven Allen and Jack Spicer, discussed Szelap's desire to take his daughter and personal belongings from Ms. Dean's residence. Allen asked Spicer to assist him and Szelap by going with them to Ms. Dean's home. On February 22, 1979, Spicer, Allen and Szelap met at a restaurant in Multnomah County to discuss the matter. Szelap showed Spicer receipts for certain home furnishings, along with a picture of his daughter and her birth certificate. Sometime during their discussions, Allen and Spicer agreed to give Szelap protection and "safe conduct" from the residence to a car in the event that there should be any trouble between him and Ms. Dean or Ms. Dean's brother. Spicer then discussed the matter with his girlfriend, Kathy Malone, who also agreed to participate.

The following morning, February 23, Spicer and Szelap visited defendant at his residence in Multnomah County. Spicer asked defendant to provide transportation for Spicer later that night from the restaurant to Beaverton. Spicer paid defendant five dollars "for gas" after defendant agreed to meet him later that evening at the restaurant.

That evening, Szelap, Allen, Spicer and Malone met at the restaurant. After some discussion, they decided that Malone, who would not be recognized by Ms. Dean, would gain entry to the residence to use the telephone. Some time later, Malone would leave and, as she did, Szelap would enter, get his daughter and belongings and leave. The other individuals were to stay outside to make sure Szelap returned to the vehicle unharmed. For transportation, the group decided to use defendant's brother's vehicle, which was large enough to hold everyone and would not be recognized by Ms. Dean. At some point during this conversation, defendant entered the restaurant and joined the group. He stayed for ten to twenty minutes. While defendant was present, the group discussed proposal cutting the telephone wires at the house.

At approximately 11:30 p.m., the entire group left the restaurant. They drove in three cars to defendant's brother's residence in Multnomah County. There they met David Johnson, who asked defendant what was "going on" and whom defendant told that the group was going to pick up "Szelap's stuff." Johnson then agreed to join the group.

They traveled in three cars to Beaverton. While enroute, defendant again mentioned to Johnson that they were going to retrieve Szelap's "stuff." Once in Beaverton, the group parked and decided to "go ahead" with the plan. Thereafter, everyone entered defendant's car and the entire group departed for Ms. Dean's residence. Along the way, Szelap told Johnson they were going to get his daughter. There was further discussion in the car about cutting the telephone wires.

The group parked in a church lot close to Ms. Dean's residence, where they remained for about one-half hour. They then went to Ms. Dean's house, where, at approximately 1:20 a.m., everyone but defendant left the car and approached the house. Defendant remained seated behind the steering wheel of the car. The police had previously learned of the plan and, with Ms. Dean's concurrence, had established surveillance at her home.

As planned, Malone went to the front door, asked to use the telephone and entered. She was immediately arrested. Twenty-five minutes later, Spicer went to the door and was also arrested. Szelap, Allen, Johnson and defendant were apprehended outside the house. The police recovered billy club from Johnson, a baseball bat from the front seat and a license plate under the passenger's seat of defendant's car. A mechanic's rag covered the rear license plate of defendant's car.

Defendant contends that the state's evidence established that any agreement occurred in Multnomah County and not Washington County, where defendant was indicted and tried, and, thus, the state failed to establish venue in Washington County. In *State v. Roper*, 286 Or 621, 595 P2d 1247 (1979), the Supreme Court held:

"* * * [W]hen an indictment charges that a criminal agreement was made in a certain county, a conviction cannot rest on proof that the agreement was made in a

different county and only subsequent acts in pursuance of the agreement occurred in the county where the making of the agreement is alleged." 286 Or at 624.

Defendant was accused of entering into an unlawful agreement "to cause the performance" of conduct constituting burglary in the first degree in Washington County, on or about February 23, 1979.

The crime of conspiracy is defined in ORS 161.450(1):

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

The agreement itself constitutes the crime of conspiracy, *State v. Roper, supra,* 286 Or at 625; *State v. Sims,* 287 Or 349, 351, 599 P2d 461 (1979). We we must determine where, if at all, defendant agreed with one or more persons to commit the offense alleged.

The evidence recited shows that the defendant entered into a major part of the conspiracy in Multnomah County. However, a new (for defendant) element was added after the parties had entered Washington County: it was then that defendant learned for the first time that one object of the group was to take a child from a residence in that county.

"* * * [I]t is * * * possible that an inchoate offense, including the communication constituting a solicitation or a conspiracy, may occur in more than one county, whether by correspondence, telephone calls, *or a series of conversations." State v. Roper, supra,* 286 Or at 627, n 4. (Emphasis supplied.)

This case is a perfect illustration of the third way of entering into a multi-county conspiracy suggested in the footnote in *Roper.*

Affirmed.

**RICHARDSON, J.,** dissenting.

The majority holds:

"The evidence recited shows that defendant entered into a major part of the conspiracy in Multnomah County.

However, a new (for defendant) and additional element was added after the parties had all entered Washington County: it was then that defendant learned for the first time that one object of the group was to take a child from a residence in that County." 54 Or App at 238.

While I agree the evidence would support the factual conclusion recited, I disagree with the legal conclusion that defendant conspired in Washington County.

Conspiracy is defined in ORS 161.450(1), as follows:

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

The statute focuses upon the conduct of an individual and his intent to perform acts, in combination with one or more persons, which constitute a particular crime. Because the statute focuses on intent to commit a particular crime, it is necessary for the state to allege and prove a specific crime was intended by the conspiracy. This is demonstrated by ORS 161.475(2), which specifies that it is a defense to the charge of conspiracy that the act intended by the agreement, if accomplished, would not be a crime.

The indictment alleged two separate conspiracies. The first count alleged the objective of the conspiracy was burglary in the first degree, *i.e.,* to break and enter a dwelling with intent to "commit the crime of custodial interference, assault and harassment therein"; the second count alleged that the object was custodial interference by taking the child from its lawful custodian. The court submitted to the jury only the charge relating to conspiracy to commit burglary by unlawful entry with intent to commit an assault. The defense under ORS 161.475(2) that the conduct intended would not be a crime was sustained here as to the intent to commit the crime of custodial interference by the court's ruling on defendant's motion for acquittal. Thus, the majority's rationale that the object of the conspiracy to get Szelap's child was made known to defendant for the first time in Washington County does not support affirmance of his conviction for the conspiracy count regarding assault that went to the jury. In order to

establish venue for that charge, the state had to prove beyond a reasonable doubt that a conspiracy to commit that particular crime was intentionally entered into by defendant in Washington County.

There is very little evidence that defendant conspired to break and enter with intent to commit assault. The only testimony regarding this conspiracy came from two of the other co-conspirators and is summarized in the majority opinion. At the first meeting, which occurred prior to defendant's involvement, the conspirators discussed a basic plan to get Szelap's property and his child. Spicer testified he later talked to defendant in Multnomah County and enlisted his help in giving them transportation. He testified defendant was never told what the group intended to do. The second meeting included Spicer's girl friend, Malone, and at a later time, defendant. There was no evidence what the group discussed in defendant's presence at VIP's restaurant other than a plan to cut the telephone wire. Spicer testified defendant was not made aware of the burglary plan. The only other discussion regarding the planned activity occurred after the group arrived in Washington County. Defendant told the latest conspirator to join, Dave Johnson, that they were going to get Szelap's property. This indicates defendant was aware they were going to get the personal property, but it does not establish defendant knew of or intended to be involved in an assault. Later, while they were all in the car together, Szelap mentioned they were going to get his child.

The only evidence that an assault was contemplated was the fact that Spicer and Allen had agreed to give Szelap "safe conduct" from the house to the car. This agreement was discussed in Multnomah County, but not in the presence of defendant. Dave Johnson had a club when arrested, and there was a baseball bat in the front seat of defendant's car when he was arrested.

I conclude the state has not proven that the conspiracy, as alleged, occurred, if at all, in Washington County. The group went to Washington County to accomplish what they had agreed to do. Defendant entered the conspiracy in Multnomah County. The basic contours of the agreement may have been reaffirmed in Washington

County. This reaffirmation is not a separate crime committed in Washington County.

Buttler, Warden, and Warren, JJ., join in this dissent.