Argued and submitted September 22, conviction reversed in part; otherwise affirmed; remanded for resentencing December 27, 1995, petition for review allowed July 23, 1996 (323 Or 690)
See later issue Oregon Reports

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY LEE WRISLEY,
*Appellant.*

(10-94-05066B; CA A86349)

909 P2d 877

Garrett A. Richardson argued the cause for appellant. With him on the brief was Multnomah Defenders.

Kay E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

### De MUNIZ, J.

Defendant appeals from convictions for felon in possession of a firearm, ORS 166.270(1),[1] unlawful possession of a short-barreled shotgun, ORS 166.272(1),[2] and conspiracy to commit robbery in the first degree. ORS 161.450; ORS 164.415. He assigns as error the denial of his motion for judgment of acquittal on all three charges, as well as his motions for dismissal and mistrial based on the state's alleged violation of discovery statutes. We affirm in part and reverse in part.

About a week before defendant's arrest on May 17, 1994, codefendant Michael Dale Handy ("Handy, Sr.") telephoned his son Michael Sean Handy ("Handy, Jr.") in Eugene, asking him to "check out a job." Handy, Jr. understood that to mean a robbery. His father specified as the target a convenience market in Lane County called the "Grocery Cart," and said that defendant would participate. Both Handy, Sr. and defendant then resided in Multnomah County. A few days later, Handy, Jr. reported his father's request to Eugene police, who monitored and taped subsequent telephone calls between father and son. During one call, Handy, Sr. said he would bring "the Garys," whom Handy, Jr. understood to mean defendant and codefendant Gary Elliot.

The night of his arrest, defendant drove from Portland with Handy, Sr. and Elliot to a motel in Eugene, where they had arranged to meet Handy, Jr. When they arrived, the trio switched to Handy, Jr.'s car, with Handy, Jr. driving, defendant in the passenger seat, and Elliot and Handy, Sr. in the back seat. While driving to the Grocery

---

[1] ORS 166.270(1) provides:

"Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm, commits the crime of felon in possession of a firearm."

[2] ORS 166.272(1) provides:

"A person commits the crime of unlawful possession of a machine gun, short-barreled rifle, short-barreled shotgun or firearms silencer if the person knowingly possesses any machine gun, short-barreled rifle, short-barreled shotgun or firearms silencer not registered as required under federal law."

Cart, each codefendant asked questions about the robbery and agreed to his respective role. Elliot loaded and unloaded a sawed-off shotgun, which was passed around in the back-seat. Defendant had a pellet pistol that police later determined was inoperative.

Listening over a "body wire" worn by Handy, Jr., Eugene police stopped the car before it reached the market. They discovered the shotgun under the driver's seat and the pellet pistol under the passenger seat. Elliot claimed ownership of the shotgun, admitted cutting down the barrel and said that "[h]e knew it was illegal because of its length." Defendant told Officer Piquette that he first became aware of the robbery plan while in Handy, Jr.'s car. However, Handy, Jr. testified that en route to the market, everyone seemed to have already been assigned their specific roles, and no one appeared surprised by discussion of the robbery.

On May 18, the day after defendant's arrest, his attorney sent a letter to the prosecutor's office requesting "all notes" of any statements made by defendant. Piquette had taken "fragmentary notes" while interviewing defendant on May 17, which he destroyed after writing his report on June 3. The prosecutor did not request discovery materials from Piquette until after the notes had been destroyed. The officer testified that he incorporated his notes into the final report, which was disclosed to defendant. The trial court denied defendant's motion for dismissal and mistrial, finding no intentional discovery violation.

A jury convicted defendant of conspiracy to commit robbery in the first degree. In a bench trial, the court found him guilty of unlawful possession of a short-barreled shotgun and felon in possession of a firearm.[3]

Defendant first assigns error to the denial of his motion for judgment of acquittal on the weapons charges, contending that there was no evidence he ever possessed the shotgun. In reviewing the sufficiency of evidence in a criminal case, after conviction, we must determine whether

---

[3] Defendant had previously been convicted of forgery in the first degree and burglary in the first degree.

a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Langley*, 314 Or 247, 267-68, 839 P2d 692 (1992), *adhered to* 318 Or 28, 861 P2d 1012 (1993). We view the evidence in the light most favorable to the state, accepting all reasonable inferences and credibility choices. *Id.*

■    Under ORS 161.015(8), "possession" means having "physical possession" or exercising "dominion or control over property." Possession of a weapon may be "actual" or "constructive." *State v. Marsh*, 78 Or App 290, 294, 716 P2d 261, *rev den* 301 Or 320 (1986).

> " '* * * To prove constructive possession the state must show the defendant knowingly exercised control of or the right to control the contraband. * * * The right of control may be exercised jointly with other persons, it need not be exclusive in order for the defendant to be criminally responsible.' *State v. Coria*, 39 Or App 507, 511, 592 P2d 1057, *rev den* 286 Or 449 (1979). (Citations omitted.)" *Id.*

■    Police found no weapons on defendant's person, but discovered the pellet pistol under his seat. The state does not contend that the pellet gun could sustain either conviction,[4] and we do not decide that question. It instead argues that defendant physically[5] and constructively possessed the shotgun. The trial court found constructive possession, and we agree.

In *Marsh*, we held that a defendant passenger constructively possessed a pistol in the vehicle's trunk simply because he knew it was there "available for his use." 78 Or App at 294. We have also held that a defendant's

---

[4] ORS 166.210(2) provides:

" 'Firearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is *readily capable of use as a weapon*." (Emphasis supplied.)

Eugene Police Officer Rainey testified that the shotgun had been successfully test fired, but the pistol's barrel had been "jammed up" and that he did not "think it would fire anything."

[5] The state contends that Handy, Jr.'s testimony raises an inference that defendant handled the shotgun, if only momentarily, while reciting his role in the robbery, and that he passed the shotgun from the front to backseat. Handy, Jr. testified that, "I seen the hand passing from one person to the next when the conversation was being told, who was going to do what * * * [a]nd there was the gun passed through the back."

involvement in criminal activities with a person who physically possessed a firearm was sufficient to raise an inference of "joint control" over that weapon. *State v. Clipston*, 3 Or App 313, 316-18, 324-25, 473 P2d 682 (1970), *overruled on other grounds by State v. Miller*, 87 Or App 439, 742 P2d 692 (1987).

Here, defendant was part of a conspiracy to commit armed robbery with Elliot and Handy, Sr., each of whom at sometime physically possessed the shotgun in the back seat. As in *Clipston*, this was sufficient to find "joint control." Also, it is reasonable to infer that defendant was aware of the shotgun's presence, and passing it around the back seat made it more readily "available for his use" than in *Marsh*. We therefore find sufficient evidence that defendant constructively possessed the shotgun, and affirm his conviction for felon in possession of a firearm.

As a separate assignment of error, however, defendant challenges the sufficiency of evidence on the "registration" element of the shotgun charge. ORS 166.272(1) makes it a crime to knowingly possess a short-barreled shotgun "not registered as required under federal law." Defendant argues that the state was required to prove that he *knew* Elliot's shotgun was unregistered. The state responds that "knowingly" applies solely to the "possession" element, and that ORS 166.272(1) requires proof only of nonregistration, not of defendant's knowledge of nonregistration.

We do not decide whether "knowledge of nonregistration" is an element of ORS 166.272(1). Even assuming that defendant is correct, we cannot determine whether he knew that the shotgun was unregistered without first deciding whether it was, in fact, unregistered. Possession of a *registered* sawed-off shotgun is not a crime under ORS 166.272(1), and the state has the burden of establishing nonregistration. *State v. Vasquez-Rubio*, 134 Or App 646, 654, 897 P2d 324, *rev allowed* 322 Or 167 (1995) (unlawful possession of a machine gun). If the state failed to prove that element, defendant's mental state is irrelevant.[6]

---

[6] Although defendant, in his brief, appears to have assigned error only to the "knowledge" issue, at oral argument he also challenged the state's underlying evidence of nonregistration. Defendant's appellate counsel stated, "We do not necessarily concede that there was proof that the firearm was unregistered.

ORS 166.272(1) refers to registration "as required under federal law." In *Vasquez-Rubio*, we concluded that proof of registration is not an affirmative defense and held that nonregistration is an element the state must prove. 134 Or App at 649, 654. To prove nonregistration under the comparable federal statute, 26 USC § 5861(d),[7] the government need only produce a certification from the Bureau of Alcohol, Tobacco and Firearms (ATF) indicating that a diligent search of the National Firearms Register and Transfer Record (NFRTR) revealed no evidence of registration. *United States v. Kimberlin*, 805 F2d 210, 241 (7th Cir 1986), *cert den* 483 US 1023 (1987); *United States v. Beason*, 690 F2d 439, 443-44 (5th Cir 1982), *cert den* 459 US 1177 (1983); *United States v. Stout*, 667 F2d 1347, 1352 (11th Cir 1982). In federal court, an ATF certification is admissible hearsay under FRE 803(10) (absence of public record or entry) and qualifies as a "self-authenticating document" under FRE 902. *Kimberlin*, 805 F2d at 241; *Beason*, 690 F2d at 444; *Stout*, 667 F2d 1351-52. We see no reason why a state prosecutor could not introduce the same evidence under analogous provisions of the Oregon Evidence Code (OEC 803(10), 902).[8]

■    The trial court, however, accepted Elliot's admission that he "knew [the shotgun] was illegal because of its length" as adequate proof on the registration element. We disagree. A

---

However, if we have to address the question of whether defendant knew it was unregistered or not * * * the question of whether it was registered or not has to be addressed in the first instance."

[7] Section 5861 provides, in part:

"It shall be unlawful for any person-

"* * * * *

"(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record[.]"

Section 5845 provides, in part:

"For purpose of this chapter-

"* * * * *

"(a) **Firearm.**- The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length[.]"

[8] We are aware of no authority prohibiting access by state law enforcement officials to the NFRTR. If we are in error on this point, then it is the legislature's task to amend ORS 166.272(1) by omitting reference to *federal* registration and set up a comparable state database, or by making registration an affirmative defense and placing the burden of proving compliance on the defendant.

codefendant's statement, that he knew a shotgun "was illegal because of its length," is not sufficient to establish non-registration beyond a reasonable doubt. We hold that the trial court erred in denying defendant's motion for judgment of acquittal on the charge of unlawful possession of a short-barreled shotgun, and reverse the conviction on that count.

Defendant also assigns error to the denial of his motion for judgment of acquittal on the conspiracy charge, contending that the state failed to prove venue in Lane County. Venue in a conspiracy prosecution is governed by both constitutional[9] and statutory provisions. ORS 131.315(9) provides:

> "If the offense is criminal conspiracy, trial of the offense may be held in any county in which any act or agreement that is an element of the offense occurs."

■      Although ORS 131.315(9) refers to "any act or agreement," the crime of conspiracy in Oregon is complete upon agreement alone. No "overt act" is necessary. *State v. Roper*, 286 Or 621, 625, 595 P2d 1247 (1979). In *Roper*, the defendant was tried in Multnomah County for conspiracy to commit robbery. 286 Or at 623. Although the defendant participated in the robbery in Multnomah County, the evidence showed that he *agreed* to do so while in Clackamas County. *Id.* at 627, 629. The Supreme Court held:

> "[W]hen an indictment charges that a criminal agreement was made in a certain county, a conviction cannot rest on proof that the agreement was made in a different county and only subsequent acts in pursuance of the agreement occurred in the county where the making of the agreement is alleged." *Id.* at 624.

Under *Roper*, defendant must be tried in the county where he *agreed* to the robbery, not where he attempted it. *But see State v. Mathie*, 54 Or App 232, 634 P2d 799 (1981), *rev den* 292 Or 568 (1982) (venue lies not only in county where defendant agreed to original conspiracy, but also in

---

[9] Article I, section 11, of the Oregon Constitution, grants the accused the right to trial "in the county in which the offense shall have been committed[.]"

second county where he later agreed to "new element" of plan).[10]

Defendant contends that, under *Roper*, if he first agreed to the robbery scheme in Multnomah County, then merely discussing the details in Handy, Jr.'s car is insufficient to prove venue in Lane County. The state argues, *inter alia*, that discussion of the details in Eugene amounts to a "new element" of the conspiracy under *Mathie*, and is therefore sufficient to establish venue in Lane County. We need not reach the state's *Mathie* argument. Defendant's contention rests on the premise that he first joined the conspiracy in Multnomah County, but the record indicates otherwise.

■ Although the jury could have found that defendant initially agreed to the robbery in Multnomah County, it could also have inferred from defendant's own admission that he first became aware of it in Handy, Jr.'s car.[11] Under the applicable standard of review, we are not free to weigh these conflicting inferences anew, but instead must view the evidence in the light most favorable to the state. *Langley*, 314 Or at 267-68. Defendant's admissions were offered as substantive evidence, which the jury could have accepted in finding that he agreed to the robbery for the first time in Lane County. It is irrelevant whether his coconspirators previously concocted the scheme in Multnomah County, because by his own admissions, defendant had not yet joined. *See Roper*, 286 Or at 627-28 (original robbery plan in Multnomah County, conceived by coconspirators before the defendant agreed to join in Clackamas County, did not make the defendant part of original Multnomah County conspiracy).

A rational factfinder could reasonably have found venue in Lane County beyond a reasonable doubt. We hold that the trial court properly denied defendant's motion for

---

[10] In *Mathie*, a defendant who agreed in Multnomah County to help a codefendant retrieve "his stuff" from a girlfriend's home in Washington County was properly prosecuted for conspiracy to commit burglary in Washington County. After entering Washington County, the defendant agreed to a "new element" of the conspiracy — *i.e.*, taking the codefendant's child from the residence. 54 Or App at 238.

[11] According to Piquette's testimony, defendant told police that he first heard of the robbery plan en route to the Grocery Cart in Eugene.

judgment of acquittal on the conspiracy charge, and affirm his conviction on that count.

■ Defendant finally assigns error to the denial of his motions for dismissal and mistrial, contending that the prosecutor violated ORS 135.815(2)[12] by failing to turn over Piquette's notes from defendant's interview before they were destroyed. Defendant's argument is without merit. The statutory duty to disclose does not apply to "fragmentary notes" or rough drafts that are merely steps in the preparation of a statement. *State v. Taylor*, 133 Or App 503, 509, 892 P2d 697, *adhered to as modified* 134 Or App 501, 895 P2d 357 (1995); *State v. Morrison*, 33 Or App 9, 12, 575 P2d 988 (1978); *State v. Bray*, 31 Or App 47, 50, 569 P2d 688 (1977). We have also held that police notes are not discoverable when their substance is incorporated into a report disclosed to the defendant. *Taylor*, 133 Or App at 510 n 6; *State v. Armstrong*, 71 Or App 467, 469, 692 P2d 699 (1984).

Piquette testified that he took only "fragmentary notes" during defendant's interview, jotting down "highlights of the conversation," and that "the notes are the basis of the report * * * [and the] report is an accurate reflection of what the notes would say." It is apparent that the officer's notes were merely a step in the preparation of defendant's statement and were incorporated into the final report that was disclosed to defendant. They were therefore not discoverable under ORS 135.815(2). We hold that the trial court did not err in denying defendant's motions for dismissal and mistrial.

Because we reverse defendant's conviction for unlawful possession of a short-barreled shotgun, we must remand the entire case for resentencing. ORS 138.222(5).

Conviction for unlawful possession of a short-barreled shotgun reversed; otherwise affirmed; remanded for resentencing.

---

[12] ORS 135.815 provides, in part:

"[T]he district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney:

"* * * * *

"(2) Any written or recorded statements or memoranda of any oral statements made by the defendant, or made by a codefendant if the trial is to be a joint one."