Argued and submitted March 10, 2004, affirmed May 4, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## HELEN DIANE (BOBO) McMILLAN,
*Appellant.*

F04115, F04425; A113456 (Control), A113457
(Cases Consolidated)

111 P3d 1154

Andy Simrin argued the cause and filed the brief for appellant.

Steven R. Powers, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong, Judge, and Kantor, Judge pro tempore.

KANTOR, J. pro tempore

### KANTOR, J. pro tempore

Defendant appeals her convictions for four counts of theft in the first degree, ORS 164.055, two counts of forgery in the first degree, ORS 165.013, one count of forgery in the second degree, ORS 165.007, and one count of racketeering, ORS 166.720, resulting from activities conducted with her husband, McMillan, related to their livestock operation. She assigns error to the trial court's denial of her motion for a judgment of acquittal on those charges, arguing that (1) there was insufficient evidence to prove that she either committed the charged offenses or aided and abetted in their commission and (2), as to the forgery convictions, there was insufficient evidence to prove that venue was proper in Union County.[1] We affirm, writing only to address defendant's venue argument.

The relevant facts are not disputed. Defendant and McMillan are husband and wife and co-owners of a livestock operation. As part of that livestock operation, McMillan tended cattle owned by other parties under "feed and care" leases. Two people for whom McMillan tended cattle were Bellamy and Collins. McMillan sold cattle on behalf of his clients through Intermountain Livestock Company (Intermountain), a livestock trading company located in Union County. As a regular business practice, Intermountain gave the proceeds from such sales to McMillan, trusting that McMillan would deliver the proceeds to his clients.

Under their "feed and care" lease, McMillan was authorized to sell a portion of Bellamy's calf crop. On March 14, 1996, Intermountain drew a check payable to Bellamy in the amount of $1,399.31 as payment for his percentage of the sale of 11 calves. McMillan sold those calves without Bellamy's knowledge, and Bellamy never received that check because it was deposited, under a forged endorsement, into a checking account held by defendant and McMillan. In

---

[1] Defendant also contends that the trial court's restitution order violated her jury trial rights under the Oregon and federal constitutions. We rejected that argument in *State v. McMillan (A112613)*, 199 Or App 398, 111 P3d 1136 (2005), and decline to discuss it further. Defendant makes a number of other assignments of error that we reject without discussion.

an interview with Lund, an investigator for the Oregon Department of Agriculture, defendant admitted to forging the endorsement and depositing the check. That check was ultimately delivered for payment on Intermountain's account with the Bank of America branch office located in La Grande.

On March 13, 1997, Intermountain drew a check payable to Collins in the amount of $786.32. On March 20, 1997, Intermountain drew another check payable to Collins, this one in the amount of $594.98. Those checks were payment for the sale of three bull calves that McMillan sold in Collins's name but without Collins's knowledge or authorization. The checks payable to Collins were also ultimately delivered for payment on Intermountain's account with the Bank of America branch office located in La Grande. Defendant admitted to tendering both of those checks for payment under a forged endorsement at a branch office of the U. S. National Bank located in Portland.

As pertinent to this opinion, defendant was charged with two counts of forgery in the first degree for the forgery of Bellamy's check in the amount of $1,399.31 and Collins's check in the amount of $786.32, and one count of forgery in the second degree for the forgery of Collins's check in the amount of $594.98. At the close of the state's case, defendant moved for a judgment of acquittal on the forgery charges, arguing that there was insufficient evidence that Union County was the proper venue because the only evidence of venue presented at trial was the fact that the checks were ultimately delivered for payment to the Bank of America branch office in La Grande, which is located in Union County. The trial court denied the motion.

As noted, defendant challenges her convictions for forgery, arguing that the state failed to prove that venue was proper in Union County. The state counters that, because the checks were ultimately delivered for payment to the La Grande branch office of Bank of America, defendant, via the banking system, uttered those checks in Union County and venue is therefore proper in Union County. We agree with the state.

On review of the denial of a motion for a judgment of acquittal, we must determine whether the evidence, viewed

in the light most favorable to the state, would permit a rational trier of fact to find that the elements of the crime were proved beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Venue is a material allegation that the state must prove beyond a reasonable doubt. *Id.* at 123. Venue is proper "in the county in which the conduct that constitutes the offense * * * occurred." ORS 131.305(1). When "conduct constituting elements of an offense * * * occur[s] in two or more counties, trial of the offense may be held in any of the counties concerned." ORS 131.315(1). For purposes of establishing venue, it is sufficient that at least one essential element of a charged offense occurred in the county in question. *State v. Paget*, 134 Or App 476, 479-80, 896 P2d 1, *rev den*, 321 Or 397 (1995).

As discussed above, the state charged defendant with two counts of forgery in the first degree and one count of forgery in the second degree. A person commits forgery if that person "with intent to injure or defraud * * * [f]alsely makes, completes, or alters a written instrument; or * * * [u]tters a written instrument which the person knows to be forged." ORS 165.007; ORS 165.013. The indictments alleged that defendant "did unlawfully, knowingly and with intent to injure and defraud, falsely complete and/or utter" written instruments in Union County—specifically, the checks drawn on Intermountain's account payable to Bellamy and Collins. To "utter" means "to issue, *deliver*, publish, circulate, disseminate, transfer or *tender* a written instrument or other object to another." ORS 165.002(7) (emphasis added).

Defendant argues that the only evidence that she uttered the checks in Union County is that the checks, via the banking system, were ultimately delivered to the La Grande branch of Bank of America in Union County. That, according to defendant, is insufficient evidence to support venue for the forgery charges because defendant did not personally tender those checks in Union County. The state does not contest the fact that the checks were delivered for payment in Union County via the banking system rather than by defendant personally. The state, however, contends that by tendering the checks for payment, which led to their eventual delivery to the Bank of America branch in La Grande, defendant effectively uttered the checks in Union County just as if she had tendered the checks there personally. The state is correct.

Under Article 4 of the Oregon Uniform Commercial Code, a collecting bank is either an agent or subagent for the owner of an item with respect to that item. ORS 74.2010(1). The fact that an endorsement is forged does not alter that relationship between the owner of the item and the collecting bank. *Id.* A collecting bank is defined as "a bank handling an item for collection except the payor bank." ORS 74.1050(5). The payor bank is the drawee of a draft. ORS 74.1050(3). Thus, when a person tenders a draft at a bank other than the payor bank, the collecting banks, including all intermediary banks that handle the draft prior to delivery for payment to the payor bank, are acting as agents on behalf of the person who initially tendered the draft. Henry J. Bailey III, 2 *Oregon Uniform Commercial Code* § 4.12, 259-62 (2d ed rev 1990).

The evidence was uncontested that the checks at issue were ultimately delivered, via the banking system, to the Bank of America branch in La Grande. The legal effect of that delivery by defendant's innocent agents—the collecting banks—was the same as if defendant personally had tendered those checks for payment. *Cf. State of Oregon v. Barnett*, 15 Or 77, 81-82, 14 P 737 (1887) (venue proper in Portland for theft of funds delivered to Portland from Pendleton on behalf of defendant by Wells Fargo Express Company because "[i]n judgment of the law, he who procures the act to be done is present at its commission, and will not be permitted to deny that he personally committed it at the place where it was done. In such case the innocent agent is not an offender; but the employer, though absent, is the principal offender, and is deemed to have been personally present."); *see also State v. Swank*, 99 Or 571, 583, 195 P 168 (1921) (" 'Where the forged instrument is mailed in one county and received in another, venue of the offense of uttering the forged instrument is in the latter county.' " (citation omitted)). Thus, there was sufficient evidence to support venue in Union County and the trial court did not err in denying defendant's motion for a judgment of acquittal on the forgery charges.

Affirmed.