Argued and submitted March 17, 2004, affirmed October 26, 2005, petition for review allowed March 21, 2006 (340 Or 308)

STATE OF OREGON,
*Respondent,*

*v.*

LEE SCOTT WERDELL,
*Appellant.*

01CR0750; A119326

122 P3d 86

Robert J. McCrea argued the cause for appellant. With him on the briefs was McCrea, P.C.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Kantor, Judge pro tempore.

KANTOR, J. pro tempore.

**KANTOR, J. pro tempore**

Defendant's son, Everts, was arrested in Curry County. Everts's girlfriend, Hagen, found a gun at a campsite in Curry County where Everts had been camping at the time of his arrest. Everts was a convicted felon and was on probation; he was not permitted to possess any firearms. ORS 166.270(1). Hagen took the gun to her house. Shortly thereafter, she called defendant at his home and told him about the gun. Defendant drove to Hagen's house, took the gun to Applegate Lake, and threw it into the deepest part. Defendant's home, Hagen's home, and Applegate Lake are all in Jackson County. Defendant was charged with, and convicted of, hindering prosecution.[1] On appeal, he contends that Curry County was the wrong venue in which to bring the charge against him because all of his actions took place in Jackson County. He also argues that, because Everts was already in police custody, his actions could not have hindered Everts's "discovery or apprehension." On review for errors of law, we affirm.

The underlying facts are not in dispute. On October 13, 2000, Everts and Vigil were camping in Curry County and fishing in a drift boat near the mouth of the Rogue River. They took the boat out into the ocean despite storm conditions and rough seas. The boat capsized; Vigil drowned. After being rescued, Everts admitted that he had been drinking alcohol at the campground. The police did not believe that they had probable cause to arrest him for boating under the influence of intoxicants, but he was taken into custody for violating probation by consuming alcohol. He was lodged in the Curry County Jail. On October 15, the investigating officer concluded that there was probable cause to arrest Everts

---

[1] ORS 162.325 provides, in part:

"(1) A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person:

"* * * * *

"(e) Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person[.]"

for boating under the influence and reckless operation of a motorboat, so he issued Everts citations for those crimes.

Meanwhile, on October 14, Hagen and her son retrieved Everts's truck from the boat landing. They also went to the campsite where Everts and Vigil had been staying. While gathering their belongings, Hagen found a gun in a container that she and Everts owned. She and her son took all of the belongings and Everts's truck to her home. While unloading the truck, she found a bottle of tequila behind the seat. The bottle had been opened; part of the contents were gone. The following day, Hagen spoke with defendant on the telephone and told him about the gun and the liquor. Defendant drove to her house and asked her for those items. When she showed him where they were, defendant told her, "You never saw this." When he left, he took the gun and the liquor. Defendant threw the liquor into the garbage and then disposed of the gun at Applegate Lake. From the time that he spoke with Hagen on the telephone until he disposed of the gun, defendant never left Jackson County.[2]

Sometime thereafter, Everts was released from jail for the probation violation. The boating-related charges were still pending against him. The relationship between Everts and Hagen ended after Everts assaulted her and was charged with assault in Jackson County. Law enforcement officials in Curry County learned about the assault charge and contacted Hagen. She informed them about the gun and the tequila.

A Curry County grand jury subpoenaed defendant to testify about Everts's possession of the gun. Defendant testified truthfully about what had happened. The grand jury returned an indictment charging defendant with two counts of hindering prosecution by disposing of the liquor and the gun.

Defendant demurred to the indictment on the ground that venue was not alleged in either count. The trial court denied the demurrer. The case then was tried to a jury.

---

[2] Defendant was and is an active member of the Oregon State Bar. His professional experience includes the prosecution and defense of criminal cases. In recent years, his practice has focused on civil litigation.

At the close of the state's case-in-chief, defendant moved for judgment of acquittal on both counts. He argued that the state had not established venue because, he contended, none of his actions had taken place in Curry County. Defendant also asserted that ORS 162.325, the hindering prosecution statute, did not apply because, in his view, neither the gun nor the liquor could have aided in the discovery or apprehension of Everts because, when defendant disposed of them, Everts was already in custody. The court rejected defendant's venue argument, ruling that, under ORS 131.315(10),[3] the charges could be brought either in the county where Everts committed the underlying offenses or in the county where defendant's hindering actions took place. With respect to defendant's second argument, the court concluded that a jury could not find that the tequila might have aided in the discovery or apprehension of Everts; it granted the motion for judgment of acquittal on that count. However, the court denied the motion as to the other count. It reasoned that, although Everts was already in custody when defendant disposed of the gun, his involvement with the justice system was unrelated to his having been a felon in possession of a firearm. The court concluded that a jury could find that the gun, had it been available, could have aided in Everts's apprehension for that crime. At the close of trial, defendant renewed the motion, again without success. After the jury returned a guilty verdict, the court entered a judgment of conviction. This appeal followed.

■　　　Defendant makes two assignments of error, in which he renews the arguments that he made before the trial court. In the first, he argues that the court erred in concluding that venue was proper in Curry County. Specifically, he contends that ORS 131.315(10) violates Article I, section 11, of the Oregon Constitution, which provides, in part, that a criminal trial must be held "in the county in which the offense shall have been committed[.]" In his second assignment of error, defendant again argues that ORS 162.325 does not prohibit the destruction of evidence in a situation such as the one

---

[3] ORS 131.315(10) provides, "A person who in one county commits an inchoate offense that results in the commission of an offense by another person in another county, or who commits the crime of hindering prosecution of the principal offense, may be tried in either county."

here. Because defendant's second assignment of error presents nonconstitutional grounds upon which we might resolve this case, we address that assignment first. *State v. Doern,* 156 Or App 566, 571, 967 P2d 1230 (1998), *rev den,* 328 Or 666 (1999).

■       As noted, ORS 162.325(1)(e) criminalizes destruction of evidence if, "with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony," the actor conceals, alters, or destroys evidence that "might aid in the discovery or apprehension of such person." Defendant argues that the statute does not apply because, at the time that he destroyed or concealed the firearm, Everts already was known to the authorities and, in fact, was confined at the Curry County Jail, albeit on other charges. The state responds that the fortuity of Everts being in a police station at the moment that defendant destroyed or concealed the firearm does not relieve defendant of responsibility for interfering in Everts's "discovery or apprehension" for the underlying felony that he had committed. According to the state, the statutory reference to interfering with the "discovery or apprehension" of a person necessarily refers to discovery or apprehension *for the relevant underlying offense.* For the following reasons, we agree with the state.

The parties' dispute turns on the meaning of ORS 162.325, which we determine by examining the text of the statute in context and, if necessary, legislative history and other aids to construction in an effort to determine the meaning most likely intended by the legislature. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 162.325 provides, in part,

"(1)   A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person:

"* * * * *

"(e) Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person[.]"

"Discovery," as the term is used in this context, refers to "the act, process, or an instance of gaining knowledge of or ascertaining the existence of something previously unknown or unrecognized." *Webster's Third New Int'l Dictionary* 647 (unabridged ed 2002). "Apprehension," as the term is used in this context, ordinarily refers to "the taking by legal, esp. criminal, process : ARREST." *Id.* at 106.

At the outset, we note that the statute applies when a person suppresses evidence that *might aid* in the discovery or apprehension of another. Thus, it is not, as defendant appears to suggest, required that the suppression *actually* have interfered in the discovery or apprehension of the other person.

Aside from that, the statute applies when there is suppression of evidence that might aid in the discovery or apprehension of "such person." The reference to "such person" is clearly to the provision in the opening subsection of the statute, that is, "a person who has committed a crime punishable as a felony." The statute thus focuses on the suppression of evidence that might link a person with the commission of a particular crime, not with merely identifying and arresting the person, without regard to the reason. A person who is in custody for an unrelated offense—say, a misdemeanor—has neither been "discovered" nor "apprehended" as the perpetrator of a felony to which ORS 162.325 would apply. As a result, the fact that Everts may have been in custody on an unrelated offense at the moment that defendant suppressed the evidence of the firearm does not mean, as a matter of law, that the evidence might not have aided in the discovery or apprehension of Everts *for the offense of felon in possession.*

We conclude that there was sufficient evidence from which the jury could conclude that defendant violated ORS 162.325(1)(e). The trial court did not err in denying defendant's motion for judgment of acquittal on that ground. We turn to defendant's other assignment of error.

As noted, defendant argues that ORS 131.315(10) violates Article I, section 11, of the Oregon Constitution, which provides, in part, "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed[.]"[4] Defendant contends that, because all of his actions took place in Jackson County, Article I, section 11, required that he be tried there. The state responds that venue is proper where any element of the charged crime occurred. It contends that the commission of the underlying "crime punishable as a felony" is an element of hindering prosecution. Because Everts committed the underlying crime in Curry County, the state argues, defendant's trial could be held there.[5] Defendant acknowledges that one of the elements of hindering prosecution is that the person aided be one "who has committed a crime punishable as a felony." However, he reasons that the element refers to the *status* of the person being aided, not to the actions that resulted in that status. In other words, according to defendant, the element was satisfied because Everts bore the status of one "who ha[d] committed a crime punishable as a felony." In his view, the location in which Everts attained that status is irrelevant.

Defendant's argument presents two distinct questions: (1) whether the conduct of the person who committed the underlying felony—as opposed to that person's status as a felon—is an element of hindering prosecution and (2), if so, whether Article I, section 11, permits the legislature to establish venue based on that conduct. The first question presents an issue of statutory construction, so we again employ the interpretive method described in *PGE*.

---

[4] Although venue is not an element of the offense, it is a material allegation that the state must prove to the jury beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 123, 873 P2d 316 (1994); *State v. McMillan A113456*, 199 Or App 408, 412, 111 P3d 1154 (2005).

[5] The state also argues that Curry County was a proper venue for defendant's trial because he intended to hinder Everts's prosecution there. However, neither actual prosecution of the underlying offender nor successful hindrance of prosecution is an element of ORS 162.325. *Cf. State v. Roper*, 286 Or 621, 595 P2d 1247 (1979) (holding that, where an agreement constituting criminal conspiracy was made in Clackamas County, it was irrelevant to the venue issue that the object of the conspiracy—robbery—was intended to be committed in Multnomah County, because actual commission of the object crime is not an element of conspiracy). Consequently, we reject the state's argument without further discussion.

The text of ORS 162.325(1) itself does not disclose whether the legislature intended for the conduct or, instead, the status of the underlying offender to constitute the element at issue here. The statute's context also does not yield a conclusive answer. Context includes prior versions of a statute and the pre-existing statutory framework within which a law was enacted, *City of Salem v. Salisbury*, 168 Or App 14, 25, 5 P3d 1131 (2000), *rev den*, 331 Or 633 (2001), as well as related statutes that were contemporaneously enacted, *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 4, 951 P2d 720 (1998).

When the legislature enacted ORS 162.325 in 1971, venue for hindering prosecution trials was governed by *former* ORS 131.390 (1971), *repealed by* Or Laws 1973, ch 836, § 358, which provided, "In the case of a person charged with the crime of hindering prosecution, the action must be commenced and tried in the county where the crime of hindering prosecution was committed, notwithstanding the principal crime was committed in another county." The text of that statute, by itself, appears to indicate that "the crime of hindering prosecution" and "the principal crime" are distinct. In other words, it appears that "the crime of hindering prosecution" refers only to the conduct of the hindering person, not to the conduct of the underlying offender.

However, *former* ORS 131.390 served as an exception to the general venue statute, *former* ORS 131.310 (1971), *repealed by* Or Laws 1973, ch 836, § 358, which provided, "Except as in ORS 131.210 to 131.240 and 131.310 to 131.470 otherwise provided, all criminal actions must be commenced and tried in the county where the crime was committed." Assuming that defendant is correct in arguing that only the status, not the conduct, of the underlying offender constitutes the pertinent element of ORS 162.325(1), then, in cases where all of the hindering conduct occurred in one county, that would have been "the county where the crime was committed." Venue would have been governed by the general rule in *former* ORS 131.310; there would have been no need to consider whether the underlying offense occurred in another county. Thus, there would have been no need for the legislature to provide an exception or a more specific rule governing venue for hindering prosecution trials.

■ When construing statutes, we generally presume that the legislature did not intend for any of its enactments to be redundant. *See* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."); *Cornier v. Paul Tulacz, DVM PC*, 176 Or App 245, 249, 30 P3d 1210 (2001) ("[W]e 'presume that the legislature did not intend to enact a meaningless statute.' " (Citation omitted.)). Under defendant's reading of ORS 162.325(1), *former* ORS 131.390 would have served no function not already addressed by *former* ORS 131.310. At least two responses to the apparent redundancy are possible.

The first is to conclude, as the state does, that the conduct, rather than the status, of the underlying offender constitutes the pertinent element. Under that construction of the element, *former* ORS 131.310 would not have applied if the hindering conduct and the underlying offense occurred in different counties; that statute governed only crimes committed entirely within a single county. Venue for trials of crimes involving more than one county was governed by *former* ORS 131.340 (1971), *repealed by* Or Laws 1973, ch 836, § 358, which provided, "When a crime is committed partly in one county and partly in another or when the acts or effects thereof constituting or requisite to the consummation of the crime occur in two or more counties, an action therefor may be commenced and tried in any of such counties." Because, according to the state's view, the conduct of the underlying offender constitutes "acts * * * requisite to the consummation of the crime" of hindering prosecution, *former* ORS 131.340 would have applied. But the 1971 Legislative Assembly plainly did not want venue to lie where only the underlying offense occurred, so it was necessary for it to provide for an exception.

Under the state's view of the element at issue here, each of the three cited venue statutes would have served an independent function. Thus, the state's construction avoids any redundancy.

A second response to the apparent redundancy is to conclude that it was intentional. It is possible that the legislature enacted *former* ORS 131.390 simply to make clear that

the conduct, as opposed to the status, of the underlying offender is *not* "requisite to the consummation of the crime." Given that the status of a person who has committed a felony and the conduct giving rise to that status are inextricably intertwined, it is plausible that the legislature saw fit to clarify that the conduct does not give rise to venue because it does not constitute the pertinent element.

The most plausible explanation that arises from *former* ORS 131.390, however, is that the legislature simply did not consider whether the phrase "a person who has committed a crime punishable as a felony" refers to the conduct or to the status of that person. As a substantive matter, both views of the pertinent element indicate the same burden of proof for the state: either way, the state must prove that the underlying offender committed a crime punishable as a felony. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 209 (July 1970) (noting that the state must prove the actual occurrence of the underlying offense). The distinction that the parties draw between conduct and status seems to be material only where venue is concerned. Given that, in 1971, the legislature did not want to allow venue in a county where only the underlying offense occurred, there would have been no reason for it to consider whether the pertinent element should be the conduct or merely the status of the underlying offender.

The fact that there is no legislative history addressing this issue supports that conclusion. Because neither the text in context nor the legislative history reveals the legislature's intent, we reach the third level of analysis under *PGE*, where we apply general maxims of statutory construction. One such maxim directs us to attempt to determine how the legislature would have intended the statute to be applied had it considered the issue. In 1973, the legislature repealed *former* ORS 131.390 and, in its place, enacted ORS 131.315(10). Or Laws 1973, ch 836, §§ 15, 358. Under the new statute, venue is also permitted where the underlying offense occurred. The enactment of the new venue statute for the offense of hindering prosecution indicates that, had the legislature considered that ORS 162.325 is unclear about the elements of hindering prosecution, it would have amended

that statute to ensure consistency with the venue provision. Thus, the first maxim supports the state's proposed construction.

■    Another maxim provides that we must choose an interpretation that will avoid any serious constitutional difficulty. *State v. Lanig*, 154 Or App 665, 674, 963 P2d 58 (1998). Both parties' proposed constructions require us to address constitutional issues. If defendant is correct, then we must consider whether venue can lie where no element of the crime occurred. If the state is correct, then we must address whether the legislature can make the underlying offense an element of hindering prosecution for venue purposes. As we explain below, Article I, section 11, does not permit the legislature to establish venue where no element of the crime occurred. It follows that, if defendant's proposed construction of ORS 162.325 is correct, the application of ORS 131.315(10) violates the constitutional venue provision.

■    We consider next whether the state's proposed construction of the hindering prosecution statute would also lead to constitutional conflict. In other words, we address the second question that defendant's assignment of error raises, namely, whether Article I, section 11, allows the legislature to establish venue based on the underlying offense. To determine the meaning of a provision of the constitution, we examine its "specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). In analyzing a constitutional provision, we strive "to understand the wording in the light of the way that wording would have been understood and used by those who created the provision." *Vannatta v. Keisling*, 324 Or 514, 530, 931 P2d 770 (1997). We also seek to "apply faithfully the principles embodied in the Oregon Constitution to modern circumstances as those circumstances arise." *State v. Rogers*, 330 Or 282, 297, 4 P3d 1261 (2000).

We begin with the wording of Article I, section 11, specifically, the phrase "in the county in which the offense shall have been committed." The words "shall have been committed" indicate that the word "offense" refers to conduct or a

result of conduct.[6] In other words, trial shall be in the county where the conduct or result that constitutes the offense— that is, the elements of the offense—occurred. Sources contemporary to the drafting and ratification of the constitution support that conclusion. *See, e.g.*, Alexander M. Burrill, 2 *A New Law Dictionary* 766 (1850) (defining "offence" as "[a]n act committed against a law, or omitted where the law requires it, and punishable by it"). The text does not distinguish between the conduct of the accused and that of any other person, indicating that *any* conduct that constitutes an element of the offense can establish venue. Thus, the text does not on its face limit venue to the location of the accused's conduct.

Case law construing the venue provision, though there is little addressing that issue, supports that conclusion. For example, it has long been the law in this state that venue can properly be established by the conduct of a third party if the accused bears criminal responsibility for that conduct. *See, e.g.*, *State of Oregon v. Barnett*, 15 Or 77, 82, 14 P 737 (1887) (holding that an employer who caused his agent to commit a crime in another county was "deemed to have been personally present" where the crime occurred).

The Supreme Court refined that rule in *State v. Roper*, 286 Or 621, 595 P2d 1247 (1979). In that case, the defendant was charged with conspiracy in Multnomah County. The evidence showed that the defendant had entered into a robbery conspiracy in Clackamas County. The state argued that venue was proper in Multnomah County because the evidence also showed that some of the defendant's coconspirators had attempted to commit the planned robbery in Multnomah County. The state also argued that venue was proper because, although the defendant had joined the conspiracy in Clackamas County, it had actually begun the day before in Multnomah County. This court held that venue was

---

[6] For criminal law purposes, a failure to act where action is legally required is considered conduct. *See* ORS 161.085(4) (" 'Conduct' means an act or omission and its accompanying mental state."); *State v. Turley*, 202 Or App 40, 120 P3d 1229 (2005) (failure to respond to police inquiries with the intent to induce the police to believe that a fugitive is not present constitutes harboring or concealing under ORS 162.325(1)(a)).

proper, concluding that the defendant's participation in the conspiracy was "an inchoate offense that result[ed] in the commission of an offense by another person in another county" within the meaning of ORS 131.315(10). *State v. Roper*, 34 Or App 273, 277, 578 P2d 479 (1978).

The Supreme Court reversed, holding that ORS 131.315(10) can be applied compatibly with Article I, section 11, only if the "actual occurrence of the acts or other events in the county of trial is part of the offense with which the defendant is charged." *Roper*, 286 Or at 627. Because Oregon's conspiracy statute does not require an overt act in furtherance of a criminal agreement, the court held that the robbery attempt was not part of the defendant's offense and therefore was not relevant in establishing venue. In response to the state's argument that venue was proper because the conspiracy had actually begun in Multnomah County, the court simply stated, "We do not agree that a prior agreement between other coconspirators can make this defendant's offense one committed in Multnomah County." *Id.* at 628. In other words, the court held that neither the conduct of other parties that preceded the defendant's entry into the conspiracy nor such conduct that occurred after the conspiracy was complete could establish venue.

Defendant argues that the Supreme Court held in *Roper*, as a constitutional matter, that venue is proper only where a defendant's own acts occurred. However, in a later case involving one of Roper's codefendants, *State v. Sims*, 287 Or 349, 352-54, 599 P2d 461 (1979), the state urged the court to reconsider its holding in *Roper*, noting that ORS 161.455 extends criminal responsibility of conspirators to agreements between coconspirators and third parties. The court explained—as a matter of statutory construction—that ORS 161.455 was enacted with the understanding that it would not create venue for all defendants in a single location if various defendants joined the conspiracy in different counties. *Id.* The court did not suggest that the venue limitation was required by Article I, section 11. The obvious implication is that, had the legislature chosen to extend venue along with criminal responsibility in ORS 161.455, it could have done so. Thus, the court clarified that its decision in *Roper*—that venue could not be based on mere criminal responsibility for

the acts of others—was a product of statute. In short, beyond the court's conclusion in *Roper* that ORS 131.315(10) "can properly be applied only when the actual occurrence of the acts or other events in the county of trial is part of the offense with which the defendant is charged," 286 Or at 627, the case does not assist us in determining whose acts are relevant for constitutional venue purposes.

Having considered the relevant case law construing Article I, section 11, we turn next to the historical circumstances leading to the section's enactment. The question before us is whether the framers of the section understood the offense of one who aids a felon in eluding justice to include the underlying felony, such that venue would be appropriate where the underlying felony occurred. Relevant historical circumstances indicate that the framers did not view the two offenses as entirely distinct.

Before Oregon's entry into the Union and the enactment of its constitution, Article I, section 2, of the Organic Law of the Oregon Territory provided, "The inhabitants of said Territory shall always be entitled to * * * trial by jury * * * according to the course of common law." At common law, a person who aided a felon in eluding justice was deemed to be a party to the felon's crime as an accessory after the fact. *State v. Allred*, 165 Or App 226, 231-32, 995 P2d 1210 (2000); *see also State ex rel Juv. Dept. v. Fitch*, 192 Or App 56, 67-69, 84 P3d 190, *rev den*, 337 Or 282 (2004). As such, the accessory was charged with the principal offense and was subject to the same punishment as the principal offender. Thus, "according to the course of common law," because the accessory's conduct was deemed to be part of the principal offense, venue was viewed as proper in the location where the principal offense occurred.

The Legislative Assembly of the Oregon Territory expressly adopted the common-law view by statute:

> "Every accessory either before or after the fact to any felony * * * may be indicted, convicted and punished * * * in the county where such person shall have become an accessory, *or in the county where such principal felony shall have been committed.*"

Statutes of Oregon 1854, *Act to Define Crimes and Misdemeanors and Regulate Criminal Proceedings*, ch 18, § 5, p 237 (emphasis added); *see also State v. Vasquez*, 336 Or 598, 608, 88 P3d 271 (2004) (stating that "the criminal procedure code that was in force in Oregon at the time that the Oregon Constitution was drafted" provides helpful context in construing constitutional provisions). Thus, it appears that, leading up to the enactment of Article I, section 11, for purposes of establishing venue, Oregonians understood the principal felony to be part of the offense committed by an accessory after the fact.

We recognize that, after the Oregon Constitution was enacted, from at least 1864 until 1973, the legislature consistently provided that venue was established only by the acts of the accessory, not those of the principal offender. *See former* ORS 131.390 (1971), *repealed by* Or Laws 1973, ch 836, § 358; General Laws of Oregon, Crim Code, ch III, § 19, p 444 (Deady 1845-1864). However, that is a policy choice that the legislature was permitted to make. Later-enacted statutes that do not merely codify preexisting common law shed little, if any, light on the meaning of the constitution. *See State ex rel Oregonian Pub. Co. v. Deiz*, 289 Or 277, 284, 613 P2d 23 (1980) ("Contemporaneous legislative actions should not necessarily be given much weight when construing constitutional principles. Constitutional draftsmen are concerned with broad principles of long-range significance[.]").

There is simply no evidence that the framers intended to enshrine in the Oregon Constitution the policy choice reflected in *former* ORS 131.390 and its predecessors. Article I, section 11, was adopted verbatim from Article I, section 13, of the Indiana Constitution without any discussion of venue. Charles Henry Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* 310 (1926). We have found no cases from Indiana predating Oregon's adoption of the Indiana provision suggesting that the courts of that state had construed the provision in a manner consistent with defendant's argument.[7] *See Priest*,

_____

[7] We note that courts in several other jurisdictions with similar constitutional venue provisions have construed them as requiring that accessories after the fact

314 Or at 418 (noting that decisions from the Indiana Supreme Court that interpret the Indiana Constitution of 1851 and that predate the Oregon adoption of a cognate provision are relevant, because they "would have informed the judgment of the [Oregon constitutional] convention in that regard"). Thus, there is no evidence that the framers intended to depart from the practice reflected in the territorial statute as a constitutional matter.

In short, the text of Article I, section 11, does not limit venue to the location of the defendant's conduct, relevant case law expressly extends it to the location of acts committed by certain other persons, and the history leading up to the constitution's enactment indicates that such acts include those of the principal offender in the trial of a person accused of assisting a felon in eluding justice.

Finally, nothing about the change from accessory law to hindering prosecution indicates that "modern circumstances" warrant a different application of the principles embodied in Article I, section 11. *Rogers*, 330 Or at 297. As we stated in *Allred*, Oregon has not abandoned accessorial liability altogether. 165 Or App at 232-33. Although the hindering prosecution statute is based on the Model Penal Code, unlike the model code, Oregon still requires that an underlying felony actually have been committed. *Id.* Thus, the underlying crime is still relevant to the prosecution of the hindering person. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 209 (July 1970) (noting that the state must prove the actual occurrence of the underlying offense).

With that understanding of the constitutional provision in mind, we return to our third-level *PGE* analysis of ORS 162.325. Given that Article I, section 11, does not bar the legislature from basing venue for hindering prosecution on the location of the underlying offense, the conclusion that

and their modern equivalents be tried only where their own conduct occurred. *See, e.g., United States v. Cabrales*, 524 US 1, 5, 118 S Ct 1772, 141 L Ed 2d 1 (1998) (construing federal venue provision); *State v. Tollett*, 173 Tenn 447, 451, 121 SW2d 525, 526-27 (1938); *State v. Overholt*, 111 W Va 417, 419, 162 SE 317, 317 (1932). However, under the interpretive principles of *Priest*, such decisions are not instructive if they followed the enactment of our constitution. Our research has revealed no cases that predate the Oregon Constitution.

the legislature made the underlying offense an element of hindering prosecution would not lead to any constitutional conflict. Furthermore, under that construction of ORS 162.325, unlike under defendant's proposed construction, giving effect to ORS 131.315(10) also does not create any such difficulties by establishing venue where no element occurred. It follows that the state's proposed construction of ORS 162.325 is preferable.

In summary, commission of the underlying felony is an element of the offense of hindering prosecution for purposes of establishing venue. Article I, section 11, does not bar the legislature from making that choice. We conclude that, had the legislature considered the ambiguity in ORS 162.325, it would have made clear that the underlying offense itself is an element of hindering prosecution. We construe the statute in accordance with that conclusion. It follows that the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.