Argued and submitted February 28, affirmed June 27, petition for review denied October 4, 2007 (343 Or 223)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY LLOYD HARDING,
*Defendant-Appellant.*

Douglas County Circuit Court
03CR0050FE; A126043

162 P3d 305

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals a judgment of conviction for hindering prosecution in violation of ORS 162.325. He assigns error to the trial court's denial of his motion for a judgment of acquittal, contending that there was insufficient evidence that he concealed something that might have aided in the discovery or apprehension of his friend, Monahan, who had committed a felony by shooting the victim, Williams. We affirm.

We state the facts in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found that the essential elements of the crime were proved beyond a reasonable doubt. ORS 136.445; *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

Monahan made several harassing telephone calls to Williams and ultimately challenged him to a fight. Defendant loaned Monahan a shotgun, accompanied him to the fight location, and watched as Monahan shot Williams in the stomach at about 3:00 a.m. Williams immediately left the scene, heading to the hospital in a car with friends. Defendant reclaimed the shotgun, went to his nearby home, and stashed it between the mattress and headboard of his bed.

A police officer met Williams and his friends at the hospital and someone in the group named Monahan as the shooter. The officer informed Deputy Kratz of the identification by radio, and Kratz went to Monahan's home, where he was informed that Monahan might be at defendant's house. At 3:30 a.m., the officer spoke briefly to defendant at his home. Defendant said that he had not seen Monahan that night and did not know where he was.

Around 6:00 a.m., Kratz returned to defendant's home with two other deputies after discovering defendant's telephone number on the caller ID of Williams's cell phone. Defendant said that he had been asleep since 11:00 p.m. except for when Kratz came looking for Monahan at 3:30 a.m. He agreed to go to the police station to make a statement and grabbed for a pair of pants that he said he had been wearing earlier. After defendant put on the pants, Deputy Wheaton

patted him down for safety reasons and found a live .308 caliber cartridge in his right front pocket that matched a cartridge found at the scene of the shooting. Wheaton returned the cartridge to defendant's pocket and took defendant outside. After emptying some items from the passenger seat of his car, Wheaton frisked defendant again and this time did not find the cartridge in his pocket. When he asked defendant about it, defendant asserted that Kratz had taken the cartridge. However, Kratz had not done so and later found the cartridge in the yard close to where defendant had been standing waiting to get into the police car.

After receiving and acknowledging his *Miranda* rights, defendant eventually admitted that he had been trying to keep Monahan from getting into trouble with the police. Defendant agreed to take a polygraph examination, but because he was too intoxicated, the officers allowed him to take a nap and sober up first. Meanwhile, they obtained a search warrant and returned to defendant's house, where they found a 12-gauge shotgun and a .308 caliber rifle tucked between the headboard and mattress of defendant's bed. Later that day, defendant admitted to lying to the officers about the shooting incident and about the cartridge missing from his pants pocket.

Defendant waived a jury, and his case was tried to the court. At the close of the state's case, defendant moved for a judgment of acquittal. He argued that, although he had hidden the shotgun and lied to the officers about the events of the morning at issue, the state failed to prove that the shotgun was evidence that might have aided in the discovery or apprehension of Monahan. The trial court denied the motion and found defendant guilty of the offense.

On appeal, defendant renews his argument that the state failed to prove that he concealed evidence that might have aided in the discovery or apprehension of Monahan. The state contends that the trial court correctly denied defendant's motion because the evidence was sufficient to establish that defendant hindered prosecution as that crime is defined in ORS 162.325. We agree with the state.

The parties' dispute turns on the meaning of ORS 162.325, which we determine by examining the statute's text

in context and, if necessary, legislative history and other aids to construction in an effort to determine the meaning most likely intended by the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

ORS 162.325 provides, in pertinent part:

"(1)   A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, * * * the person:

"* * * * *

"(e)   Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person[.]"

In examining the statute's text, we construe words of common usage in accordance with their plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. The plain language of the statute requires only that the evidence concealed "might" aid in the discovery or apprehension of the person who committed the felony. The term "might" commonly refers to a "probability [or] possibility." *Webster's Third New Int'l Dictionary* 1432 (unabridged ed 2002).

Defendant claims that the shotgun could have aided officers only in identifying the shooter and, because Monahan was identified by other means, it could not have aided the officers in discovering him. Defendant incorrectly relies on two bases for this claim: (1) the knowledge of the police at the time that he concealed the shotgun and (2) the lack of evidence as to how the gun itself helped the police to find Monahan. We address each of those bases in turn.

First, defendant asserts that the police already knew Monahan's identity as the shooter when defendant concealed the shotgun and that the shotgun therefore could not have aided the police in discovering or apprehending him. Defendant's view of the evidence is inconsistent with our standard of review, however. As noted above, we view the evidence in the light most favorable to the state and draw all reasonable inferences in the state's favor to determine whether a rational trier of fact could find the necessary facts beyond a reasonable doubt. *Hall*, 327 Or at 570. Here, there is no direct

evidence establishing whether defendant concealed the shotgun before or after the police learned the shooter's identity. However, given that the evidence shows that defendant was at the scene of the shooting, a rational trier of fact could reasonably infer that he reclaimed the shotgun immediately after Monahan shot Williams and, thus, that he concealed the weapon before Williams and his companions spoke to the police at the hospital and identified Monahan as the shooter. Viewing the evidence in that light, at the time defendant concealed the shotgun, it "might [have] aid[ed] in the discovery or apprehension of" Monahan, as required under ORS 162.325.

Defendant next contends that the shotgun did not in fact aid the police in discovering or apprehending Monahan. That argument is inconsistent with the language of the statute, which uses the conditional word "might" rather than requiring proof that the physical evidence actually did aid in the discovery or apprehension of the person. The shotgun was a possible aid in the discovery or apprehension of the shooter, through fingerprint analysis or other forensic evidence, at least until the police learned his identity—and, as discussed above, we agree with the trial court's implicit finding that the police did not learn Monahan's identity before defendant concealed the shotgun. Accordingly, defendant's conduct in concealing the shotgun was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt.

As a final note, defendant filed his brief after we issued our opinion in *State v. Werdell*, 202 Or App 413, 122 P3d 86 (2005), but before the Oregon Supreme Court reversed that holding. *State v. Werdell*, 340 Or 590, 136 P3d 17 (2006). Defendant's subsequent reliance on that case is therefore misplaced. In *Werdell*, the defendant disposed of a gun that constituted evidence linking his son to the commission of a felony of which the police were unaware. At the time the defendant disposed of the evidence, his son was in police custody for an unrelated crime. The Supreme Court rejected the state's proposed extension of the statute to cover the "suppress[ion of] evidence that might have aided in the discovery *of the fact that such a person had committed a crime.*" 340 Or at 595-96 (emphasis in original). The focus of that decision was the misapplication of the word "discovery" in ORS

162.325(1)(e) to the fact that a known person has committed an unknown felony rather than to the identity of an unknown person who has committed a felony of which the police are already aware. *Id.* at 596-97. This case involves exactly the sort of situation to which the statute does apply, according to the Supreme Court in *Werdell*—the concealment of evidence that would aid in the discovery of the person who committed a known felony.

Affirmed.