Argued and submitted August 31, convictions for delivery and conspiracy to deliver Schedule II controlled substance reversed; otherwise affirmed December 8, 2004, petition for review denied April 26, 2005 (338 Or 488)

# STATE OF OREGON,
*Respondent,*

*v.*

# EDDIE LYNN MILLER,
*Appellant.*

00CR2093; A117475

103 P3d 112

Jennelle Meeks Barton, Deputy Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his convictions for the manufacture, delivery, and possession of methamphetamine, a Schedule II controlled substance, possession of pseudoephedrine, an ingredient in methamphetamine, and conspiracy to commit those same crimes.[1] Defendant asserts that the trial court erred in denying his motion for judgments of acquittal with respect to each of the counts for which he was convicted on the ground that the evidence was too speculative to support the convictions. We affirm in part and reverse in part.

In reviewing an order denying a motion for judgment of acquittal, we view the evidence in the light most favorable to the state, giving the state the benefit of all reasonable inferences that may properly be drawn from that evidence, to determine whether any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994); *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). We state the facts accordingly.

Neighbors complained about the traffic at a home in Coos Bay. Police officers investigated the complaints and obtained a search warrant. Approximately two hours before the officers executed the search warrant, Detective Smartt positioned himself in the breakfast nook of an adjoining residence to watch the target house, which was 80 feet away. From his vantage point, Smartt could see the house, a shed that stood approximately 40 feet from the house, and a motor home on the same property. A tarp covered the opening of the shed but did not reach the ground, leaving a gap of one to two feet.

Smartt watched defendant and three other people—Michael Moore, the owner of the property, Mike Gannon, and Kevin Razor—"out in the back, walking into the house, walking out front, [and] into the shed on numerous occasions." At

---

[1] Defendant also appeals his conviction for endangering the welfare of a minor. We reject without discussion his assignment of error pertaining to that conviction.

some point, Moore and Gannon left the property, but defendant and Razor remained. Those two again entered the shed, approximately 13 minutes before police executed the warrant. Each time the men entered the shed, they did so through the left side of the tarp. On the occasions when all four men entered the shed, Smartt could see some of the men's feet under the tarp for "seconds." The feet that he could see would then disappear—one foot and then the other—as if the person was stepping up onto something. Smartt also testified that defendant appeared, from Smartt's vantage point across the street, to be in a "highly agitated state. He was moving around all over the place. When he was standing with somebody, he was shuffling and not able to stand still[.]" Smartt opined at trial that defendant had been under the influence of a central nervous system stimulant like methamphetamine.

Police officers then executed the search warrant. On entering the shed, they discovered that, behind the tarp, there was an open garage area littered with junk. While standing in the garage area, the officers could smell an odor of chemical fumes. Just beyond the left side of the tarp was a locked door. When the officers pried it open, they discovered a room containing an active, functioning methamphetamine laboratory. The lab had a wood floor that was one or two feet higher than the floor in the rest of the shed, so that a person had to step up to enter it. The lab contained noxious fumes, and a "white fog" hung in the air. A gas generator "was bubbling gas into a quart jar to salt out the methamphetamine" and was "foaming and steaming." After an initial glimpse into the lab, the officers determined that the room was too hazardous to enter before airing it out and suiting up in protective gear. When they returned to the lab, the officers discovered 22.68 grams of a substance that contained methamphetamine and more than 20 grams of pseudoephedrine.

Defendant was charged with conspiracy to manufacture, deliver, and possess methamphetamine, conspiracy to possess pseudoephedrine, and the substantive offenses. At the close of the state's case, defendant moved for judgments of acquittal on all charges. The trial court denied the motion, and a jury found defendant guilty of all the offenses. In the

judgment document, the court merged each of the convictions for manufacture, delivery, and possession with the corresponding conspiracy convictions as required by ORS 161.485(3).

On appeal, defendant challenges each of the convictions, arguing that his mere presence on the property where methamphetamine was being manufactured is insufficient to support any of the convictions. Because the convictions for the inchoate offenses merged with the convictions for the completed offenses, we need to address the conspiracy convictions only if we reverse the convictions for possession, manufacture, or delivery and thereby "unmerge" the corresponding conspiracy convictions. *See State v. Wilson*, 161 Or App 314, 319, 985 P2d 840 (1999), *rev den*, 330 Or 71 (2000) (if two convictions merge and one of those convictions is reversed on appeal, the trial court may properly enter a sentence on the other conviction).

Again, we will uphold the convictions if the evidence and all reasonable inferences flowing from it would enable a rational trier of fact to find the essential elements of the offenses beyond a reasonable doubt. *King*, 307 Or at 339. An inference is reasonable if " 'there is a reasonable probability that the conclusion flows from the proven facts.' " *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)). The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw. *Bivins*, 191 Or App at 467. Still, an inference of guilt must be supported by the evidence and follow logically from it; stacking inference upon inference to the point of mere speculation is impermissible. *Id.* at 468. In addition, an inference may be unreasonable if it requires too great an inferential leap. *Id.*

On the charge of manufacture of a Schedule II controlled substance, the state was required to prove that defendant knowingly participated in or abetted the manufacture. ORS 475.005(15); *State v. Saude*, 95 Or App 428, 431, 769 P2d 784 (1989). We have held that "mere presence at the

scene of the manufacture, even with knowledge of the activity, is not sufficient." *Id.*; *see also State v. Moczygemba*, 234 Or 141, 144, 379 P2d 557 (1963) (mere presence at the scene of a crime, even with knowledge of an unlawful act, is insufficient to convict a person as an aider or abettor). Defendant argues that the state proved only that he went into the part of the shed that shared a roof with the methamphetamine lab and that to find that he knowingly participated in the manufacturing operation would require the jury to stack inferences to the point of mere speculation.

■ We agree with defendant that, to find him guilty beyond a reasonable doubt of all the charged offenses, the jury would first have to infer that defendant entered the methamphetamine lab. To reasonably infer that he entered the lab, however, the jury could have used established facts, rather than conjecture. Although the eyewitness testimony only places defendant somewhere inside the shed, that testimony is not the only evidence to support the inference that defendant entered the lab. Several pieces of circumstantial evidence also support that inference.

First, Smartt testified that, on the occasions when all four men entered the shed, he could see some of the men's feet and the feet that he saw appeared to step up. He also testified that defendant had walked around with those men all morning and that they all entered the shed together. That testimony supports the inference that defendant entered the lab; if all the men were together and those whose feet were visible appeared to enter the lab, it is reasonable to infer that they all entered the lab. Next, Smartt testified that defendant consistently entered the shed toward the side that contained the methamphetamine lab. That, too, supports the inference that defendant entered the shed in order to enter the lab. Smartt also testified that defendant appeared to be under the influence of methamphetamine. That fact lends additional support to the inference that defendant entered the shed; although not all users of methamphetamine also manufacture it, a person under the influence of methamphetamine is more likely to enter a methamphetamine lab than someone who does not use methamphetamine. Finally, the state established that, other than the lab, the shed contained

only a storage area crammed with junk and permeated by toxic fumes. Yet, defendant and the others repeatedly entered the shed during a two-hour period. Taking all of the evidence together, the jury reasonably could have inferred that defendant entered the methamphetamine lab. That may not be the only inference that the jury could have drawn, but it was nonetheless a reasonable and permissible inference.

■ ■ Further, the jury could have inferred from defendant's entry into the lab that he participated in the manufacturing process. Although mere presence in a place where an illegal activity is occurring is generally insufficient to support an inference that the person is part of the illegal activity, that principle properly applies only in cases in which the person plausibly could have been present for some other innocent purpose. *See Saude*, 95 Or App at 431 (photographs showing defendant standing in garage where methamphetamine was made and showing characteristics of his clothing that could be consistent with manufacture of methamphetamine were insufficient basis to show he was involved in the manufacture).

Here, however, the officers entered the shed only 13 minutes after defendant had last entered it. At that time, the open garage area of the shed contained only junk and was permeated by chemical fumes; the lab itself contained functioning methamphetamine-manufacturing equipment and also was permeated with toxic fumes, to the extent that officers had to air out the lab and don protective gear before they could safely enter it. The jury could have inferred that defendant would not have repeatedly entered such a toxic environment unless he was involved in the manufacturing operation. Again, although that is not the only inference that the jury could have drawn from defendant's presence in the lab, it is a reasonable inference. Moreover, although the inference that defendant was involved in the manufacturing operation rests on the inference that he repeatedly entered the lab, both inferences were reasonable, logical, and supported by the evidence. We therefore conclude that circumstantial evidence of defendant's repeated presence in an active methamphetamine lab, at a time when the lab was permeated with toxic

fumes as a byproduct of the manufacturing process, was sufficient to allow a rational trier of fact to find that defendant knowingly participated in the manufacture of a controlled substance. Because we affirm the manufacture conviction, we need not address the merged conviction for conspiracy to manufacture a controlled substance.

There also was sufficient evidence to support defendant's convictions for possession of methamphetamine and pseudoephedrine. Possession may be actual or constructive. *State v. Sosa-Vasquez*, 158 Or App 445, 448, 974 P2d 701 (1999). "Constructive possession is shown by evidence that a defendant exercised control of, or the right to control, the controlled substance." *Id.* Although the right to control need not be exclusive, *State v. Wrisley*, 138 Or App 344, 349, 909 P2d 877 (1995), *rev dismissed*, 327 Or 521 (1998), mere presence in the vicinity of a controlled substance generally is insufficient to prove constructive possession. *Sosa-Vasquez*, 158 Or App at 448.

As discussed above, the jury in this case reasonably could have inferred from defendant's presence in the lab's toxic environment that he manufactured methamphetamine. The jury also reasonably could have inferred that, as a participant in the manufacturing operation, defendant had a right to control the substances found inside the lab, which included pseudoephedrine and methamphetamine. A rational trier of fact therefore could have found that defendant constructively possessed methamphetamine and pseudoephedrine. As with the conspiracy to manufacture conviction, we need not address the convictions for conspiracy to possess because they merged with the possession convictions.

Although the evidence is sufficient to support defendant's convictions for manufacture and possession, it is insufficient to support the delivery conviction. Delivery is the "actual, constructive or attempted transfer" of a controlled substance. ORS 475.005(8). Possession of a controlled substance with intent to deliver it constitutes an "attempted transfer." *State v. Boyd*, 92 Or App 51, 55, 756, P2d 1276, *rev den*, 307 Or 77 (1988). A defendant's possession of a quantity of a controlled substance that is not consistent with personal

use, together with a defendant's possession of materials commonly associated with the transfer of a controlled substance, is sufficient evidence of intent to deliver to uphold a conviction for delivery. *See, e.g., State v. Aguilar*, 96 Or App 506, 773 P2d 17, *rev den*, 308 Or 315 (1989) (a defendant's possession of a quantity of heroin and methamphetamine not consistent with personal use but consistent with trafficking in controlled substances, and his possession of items associated with drug trafficking—such as drug records, scales, large sums of currency, and razor blades—was sufficient evidence of attempt to transfer to support convictions for delivery of heroin and methamphetamine). Mere presence near a controlled substance and items associated with delivery, however, is insufficient evidence to support a delivery conviction. *Sosa-Vasquez*, 158 Or App at 448.

■ Here, the state produced evidence that police officers seized an undisclosed quantity of methamphetamine and items that are commonly associated with the transfer of controlled substances, including ziplock bags, hollowed-out batteries often used to transport drugs, other packaging materials, scales, and records of what appeared to be drug sales. Defendant again argues that his mere presence on the property where the seized items were discovered is insufficient to support an inference that he intended to deliver methamphetamine. This time, we agree.

The state produced no evidence that could link defendant with the scales, packaging materials, or drug records. Officers discovered those items in the main house and the motor home but not in the lab itself. As defendant points out, he did not own or live in the house or motor home where the items were found, his fingerprints were not on any of the items, the drug records were not in his handwriting, Smartt did not testify that he observed defendant in possession of or even in the vicinity of any of the seized items, and there was no other evidence that defendant had ever used or had any knowledge of the items. Nor was there any separate evidence of an agreement between defendant and the owner of the property that could support an inference of constructive possession of the items under a joint-right-of-control

theory. In the absence of some evidence that defendant actually or constructively possessed the scales, packaging materials, or drug records, no rational trier of fact could find defendant guilty beyond a reasonable doubt of delivery of a Schedule II controlled substance.

██ Because we reverse defendant's conviction for delivery of a controlled substance, we must also address whether there is sufficient evidence to support defendant's conviction for conspiracy to deliver a controlled substance. Although, for the reasons explained above, there was sufficient evidence to allow the jury to infer that defendant participated in the manufacturing process, there was insufficient evidence to support an inference that he conspired to deliver methamphetamine. Conspiracy to deliver requires an agreement to deliver. ORS 161.450. Here, the state produced no evidence that defendant entered into an agreement to deliver methamphetamine. Accordingly, the trial court erred in denying defendant's motion for judgments of acquittal on the charges of delivery of and conspiracy to deliver a Schedule II controlled substance.

Convictions for delivery and conspiracy to deliver Schedule II controlled substance reversed; otherwise affirmed.