Argued and submitted May 6, at Silverton High School, Silverton, affirmed December 30, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ANTIONE LARAY YOUNG,
aka Antoine Laray Young,
*Defendant-Appellant.*

Multnomah County Circuit Court
070130071; A136879

225 P3d 48

Elizabeth Corbridge Ranweiler, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were

John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rhoades, Judge pro tempore.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant was convicted of one count of harassment, ORS 166.065, and one count of felon in possession of a firearm, ORS 166.270. Those convictions arose from a fight in which defendant hit and bit a woman, and, when police responded to a 9-1-1 call, they found defendant asleep in a bed with a loaded handgun underneath the pillow. Defendant assigns error on appeal to the trial court's denial of his motion for a judgment of acquittal on the felon in possession charge. He argues that there was insufficient evidence to support a finding that he possessed or controlled the gun. We disagree and, accordingly, affirm.

In determining whether there is sufficient evidence to overcome a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to decide whether a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *See, e.g.*, *State v. Miller*, 196 Or App 354, 356, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005). We state the facts in that light.

At approximately 9:13 a.m. on January 6, 2007, police were dispatched to an apartment in North Portland in response to a 9-1-1 call. Four officers arrived at the apartment within a few minutes of the call, where they encountered a frightened woman outside the apartment with injuries to her neck and face. The officers asked the woman how she had received the injuries, and she directed them to the back bedroom in the apartment, where she said defendant was located. Believing that defendant was asleep in the bedroom, the officers decided that three of them would enter the bedroom to arrest defendant while the fourth officer went to the back of the apartment. The three officers entered the bedroom and found defendant alone and asleep on a bed under a blanket, with his head on a pillow. One officer entered with a Taser pointed at defendant while two other officers grabbed defendant's arms and awakened and handcuffed him. Defendant was easily roused from his slumber. He was wearing only boxer shorts, so one of the officers asked him if he wanted his pants and shirt. Defendant replied that they were on the floor, and the officer handed the clothing to him. There

was also a bloodstained woman's shirt on the floor of the bedroom.

The officers sat defendant on the bed. When they searched the immediate area for weapons, they noticed a small, single bullet sitting on top of a dresser next to the head of the bed, which was within arm's reach of where defendant had been sleeping. The bullet was located on the side of the dresser closest to the bed, approximately at defendant's eye level when he was lying in the bed. One officer lifted up the pillow on which defendant's head had rested and saw a .22-caliber semiautomatic handgun. The gun was located directly underneath where defendant's head had rested. When asked whether the pillow was "one of those big fluffy down pillow, large pillows," an officer testified that it was a "[j]ust a regular pillow" and was "not huge." The police did not press on the pillow or otherwise test whether defendant would have felt the gun through the pillow. The officers did not submit the handgun or bullet for fingerprint or DNA testing.

One of the officers told defendant that he was under arrest for hitting the woman whom police had encountered outside the apartment. Defendant responded, "Yeah, I popped her. We were hitting each other." The officer asked, "How many times?" Defendant responded, "I just hit her. She bit me so I * * * bit her back on the cheek." Based on that incident, defendant was charged with fourth-degree assault, harassment, and felon in possession of a firearm.

Defendant waived his right to a jury trial. At the close of the state's case and again after the defense rested, defendant moved for a judgment of acquittal of the felon in possession charge. The court denied defendant's motion and, ultimately, convicted him of the harassment and felon in possession charges.

On appeal, defendant assigns error to the court's denial of his motion for judgment of acquittal on the felon in possession charge because, defendant asserts, the state did not present sufficient evidence to prove that he possessed or controlled the gun. ORS 166.270(1). In defendant's view, the only evidence linking him to the gun was his proximity to it,

which he contends is insufficient to prove that he controlled and, therefore, possessed the gun.

The state responds that the trial court properly denied defendant's motion, because there was sufficient evidence for the factfinder to conclude that defendant had possessed the gun. The state points particularly to the evidence that defendant was sleeping alone in the back bedroom of the apartment dressed only in his boxer shorts with a bullet within arms' reach and a loaded gun under the regular-sized pillow on which he slept. According to the state, a factfinder could reasonably infer that defendant knew that the gun was under his pillow, and that, by choosing to sleep with his head on the pillow, he necessarily exercised control over the gun. Although the facts presented in this case pose a close question, we ultimately agree with the state that the evidence was sufficient to support a finding that defendant possessed or controlled the gun.

ORS 166.270(1) defines the crime of felon in possession of a firearm:

> "Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or *has in the person's possession or under the person's custody or control any firearm* commits the crime of felon in possession of a firearm."

(Emphasis added.) Here, the contested legal issue reduces to whether sufficient evidence was presented to permit a factfinder to infer that defendant knowingly exercised control of the gun, because the position of defendant's head over the gun effectively prevented others from readily picking it up. The state's evidence as a whole supports an inference that defendant felt the gun through the pillow and, consequently, that he knew that his head was resting on it. The state established that the gun was located under the pillow *directly* below where defendant's head rested. One of the arresting officers explained that the pillow was not large or fluffy but, rather, was only a "regular pillow" and "not huge." Furthermore, the court saw the size and shape of the hard, metal gun. From that evidence, a factfinder could reasonably infer that the weight of defendant's head against the pillow would

cause him to feel the gun directly underneath it, and, subsequently, to determine the source of the sensation. That inference, in turn, would support a finding that defendant controlled the gun by choosing to sleep with his head on the pillow with the gun directly underneath it.

In sum, sufficient evidence was presented to permit a rational factfinder to infer that defendant knew that the gun was under the pillow on which his head was resting and, hence, that he controlled the gun. Consequently, the trial court properly denied defendant's motion for judgment of acquittal of the felon in possession charge.

Affirmed.