Argued and submitted March 19, affirmed October 29, 2014, petition for review denied March 5, 2015 (356 Or 837)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JING SHENG CHEN,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1001786; A150410

338 P3d 758

Lindsey K. Detweiler, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney Genereal, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Defendant appeals his conviction after a jury trial of a number of offenses arising out of his involvement with a marijuana grow operation.[1] We write only to address defendant's assignment of error challenging the denial of his motion for judgment of acquittal on the charge of delivery of marijuana, and we affirm.

On review of the trial court's denial of defendant's motion for judgment of acquittal, we view the relevant facts, including any reasonable inferences, in the light most favorable to the state to determine whether a rational trier of fact could find that the state proved every element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Stated in accordance with that standard, the relevant facts are as follows.

In June 2010, police received information from Portland General Electric (PGE) about a possible theft of power at a house on Southeast 58th Drive in an unincorporated area near Milwaukie. PGE had determined that the power meter at the house had been bypassed and a large amount of electricity was being used. Police surveillance over a period of six to eight weeks led police to conclude that no one was living in the house and that it likely contained a marijuana grow operation. Police saw a Toyota pickup truck owned by defendant travel between the 58th Drive house and defendant's house on Southeast 87th Avenue in Portland. On July 12, 2010, police saw the pickup truck transport a load of lumber to the 58th Drive house. From July 20 through the month of August 2010, police observed defendant entering the 58th Drive house nearly every day, sometimes during the day and sometimes at night. On August 7, 2010, defendant entered the house with a marijuana "grow hood." Occasionally, police saw an older man, Zhen (later determined to be defendant's brother-in-law), tending the yard in the front of the 58th Street house. The

---

[1] Defendant was convicted of manufacture of marijuana, ORS 475.856; delivery of marijuana, ORS 475.860; possession of marijuana, ORS 475.864; and first-degree theft, ORS 164.055. On appeal, he challenges the trial court's denial of his motions for judgment of acquittal on the delivery and theft charges and a special jury instruction on the delivery charge.

PGE account was in Zhen's name, but neither defendant nor Zhen owned the 58th Drive house.

On September 7, 2010, defendant loaded seven cardboard boxes from his own garage into the back of the truck and put a scrap of wood on top of the boxes. Police stopped defendant at a parking lot on 82nd Avenue and placed him in handcuffs. The seven boxes in the back of the truck were later determined to contain fresh marijuana trimmings in plastic bags.

Police subsequently searched the 58th Drive house pursuant to a search warrant and found a large and complex marijuana operation, including structural modifications (such as a false door) designed to conceal the operation; specialized electrical wiring, lighting, ventilation, and controls; and over 400 marijuana plants at various stages of growth, with an estimated street value of over $1.2 million. The investigating officer, McCollister, testified at trial that the operation was "for-profit manufacturing for distribution."

Among other offenses, defendant was charged with delivery of marijuana for consideration, under ORS 475.860, which provides, in part:

"(1)  It is unlawful for any person to deliver marijuana.

"(2)  Unlawful delivery of marijuana is a:

"(a)  Class B felony if the delivery is for consideration."

"'Deliver' or 'delivery' means the actual, constructive or *attempted transfer*, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship." ORS 475.005(8) (emphasis added). An attempt to commit a crime occurs if a person "intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1).

Possession of a controlled substance with the intent to deliver it constitutes an attempted transfer. *State v. Boyd*, 92 Or App 51, 55, 756 P2d 1276, *rev den*, 307 Or 77 (1988). As a general rule, a defendant's possession of a quantity of a controlled substance that is not consistent with personal use, together with the possession of materials commonly

associated with the transfer of a controlled substance, is sufficient evidence of an intent to deliver. *State v. Aguilar*, 96 Or App 506, 773 P2d 17, *rev den*, 308 Or 315 (1989).

Defendant filed a motion for judgment of acquittal on the delivery charge, contending that, although there was evidence of growing, there was no evidence of harvesting or packaging or an attempt to sell. The court denied the motion, explaining that the sophisticated nature of the grow operation was evidence of a substantial step toward the ultimate harvest and sale of the marijuana.

On appeal, defendant concedes that the evidence is sufficient to support a finding that he was involved in the manufacture and possession of marijuana. But he renews his contention that it is insufficient to establish delivery. He acknowledges that this court has held that the possession of a large quantity of controlled substance that is inconsistent with personal use, together with possession of materials commonly associated with the transfer of a controlled substance, is sufficient evidence of an attempted transfer, *see, e.g., State v. Alvarez-Garcia*, 212 Or App 663, 666, 159 P3d 357 (2007) (accepting state's contention that "a reasonable factfinder could infer, based on defendant's possession of an extremely large quantity of methamphetamine, separated into two packages, that defendant intended to deliver the drug."); *Aguilar*, 96 Or App at 510 (possession of a quantity of heroin and methamphetamine consistent with trafficking, along with items associated with trafficking, constituted sufficient evidence of an attempt to transfer controlled substances), but he asserts that here there was no evidence of possession of materials commonly associated with the transfer of a controlled substance. Under those circumstances, defendant contends, citing *State v. Miller*, 196 Or App 354, 356-57, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005), that the evidence is insufficient to support a conviction for delivery.

Because defendant relies heavily on *Miller*, we consider that case in detail. In *Miller*, police had obtained a warrant to search property where there was a house, shed, and motor home. Before executing the warrant, officers watched the property for two hours. During that time, they

saw the defendant and three others, including the property owner, "out in the back, walking into the house, walking out front, [and] into the shed on numerous occasions." 196 Or App at 356. Upon execution of the search warrant, officers discovered an active methamphetamine lab inside the shed. As relevant here, the defendant in *Miller* challenged his convictions for manufacture, delivery, and possession of methamphetamine. He asserted that his mere presence on the property where methamphetamine was being manufactured was insufficient to support any of the convictions absent evidence of a connection to the drug operation.

In discussing the defendant's contentions, we addressed the extent to which the trier of fact could rely on inferences from the evidence to find beyond a reasonable doubt the necessary elements of the offenses. An inference, we said, is reasonable if "'there is a reasonable probability that the conclusion flows from the proven facts.'" *Id.* at 358 (quoting *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004)). The inference need not be inevitable, but must be supported by the evidence and flow logically from it. *Id.*

In *Miller*, we reasoned that evidence logically permitted the inference that the defendant had been inside the active methamphetamine lab and, from that inference, a jury could infer that he was guilty of manufacture and possession. *Id.* at 360-61. However, we reached a different conclusion with respect to the delivery charge. Although police had found evidence on the property of an intent to deliver, including scales, packaging materials, or drug records, we reasoned that the state had failed to produce any evidence linking the defendant with those items. We said that "[m]ere presence near a controlled substance and items associated with delivery * * * is insufficient to support a delivery conviction." *Id.* at 362. We concluded that, in the absence of some evidence that the defendant "actually or constructively possessed" the items commonly associated with the transfer of controlled substances, no rational trier of fact could find defendant guilty of delivery beyond a reasonable doubt. *Id.* at 363.

Here, defendant contends, the same conclusion is required. Although, as he concedes on appeal, there is evidence

from which a reasonable trier of fact could infer the manufacture and possession of marijuana, he asserts that there is no evidence linking him personally to the delivery of marijuana, because there is no evidence that he possessed the items typically associated with the trafficking of marijuana or, even, that there was harvested, salable marijuana. Thus, he reasons, the evidence is insufficient to allow the inference that he took a substantial step toward transferring the marijuana, as required for the charge of delivery. In support of his argument, defendant points to the testimony of the investigating officer, McCollister, who the state called as a witness. McCollister testified that large marijuana grow operations are commonly "broken down into kind of a hierarchy * * * [where] we would have actual people that held very specific positions within the organization." According to McCollister, such operations commonly have electricians who "divert the power and set up the actual electrical component that will operate the entire marijuana grow." They also have a "tender" who "sets up the grow and then tends the plants[.]" After the marijuana is harvested and dried, another person is "typically responsible for the distribution of the marijuana itself, or the sale." McCollister testified that, in his opinion, defendant's possession of the marijuana trimmings indicated that he was the "grow tender." Defendant relies on McCollister's testimony to argue that "the only possible inference was that at some unknown point in the future *someone other than defendant* may sell the marijuana." (Emphasis in defendant's brief.) Essentially, defendant argues that the only possible inference that could be drawn from the evidence was that defendant was an employee of the person or entity that owned the marijuana and would later sell it, either to dealers or users.

The state responds that, in light of the size and sophistication of the operation, even without defendant's possession of the trappings of transfer, defendant's active participation in the operation was itself sufficient to allow an inference of an intent to deliver, because an operation of that size is only intended for distribution. The state distinguishes *Miller* by explaining that in that case, the defendant was merely present at the time of the execution of the warrant, and the defendant's involvement in the manufacture

and possession was based largely on inference. Here, in contrast, there is strong evidence of defendant's active involvement in the grow operation. From that evidence, the state contends, a jury could readily infer that it was defendant's operation and that defendant had an intention to distribute the marijuana.[2]

We agree with the state that the size and sophistication of the operation allowed for a reasonable inference that the operation also included distribution. But it is neither the size nor the sophistication of the operation that causes us to agree with the state that the evidence supports an inference of *defendant's* involvement in an attempted transfer. Rather, it is because we agree with the state that a reasonable jury could infer from the evidence—including the frequency and duration of defendant's presence at the house, his transport of construction materials and trimmings, and the absence of other individuals working the operation—that it was defendant's operation. That is not the only possible inference from the evidence, but it is a logical and reasonable one. If, as the jury could find, it was defendant's operation, then, even in the absence of evidence of items commonly associated with transfer, it is a logical and reasonable inference that defendant intended to sell the marijuana when it was harvested, either to a dealer who would sell to users or to users themselves. As mentioned, possession of a controlled substance with an intent to deliver it constitutes an attempted transfer, *Boyd*, 92 Or App at 55, which is sufficient to establish "delivery" under ORS 475.860. Accordingly, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on the delivery charge.

Affirmed.

---

[2] There is no contention by the state that the trimmings found in boxes in the back of the pickup truck were evidence of delivery.