Argued and submitted May 8, 2019; conviction on Count 1 reversed, remanded for resentencing, otherwise affirmed February 18, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANA LYNN O'HARE,
*Defendant-Appellant.*

Deschutes County Circuit Court
16CR39998; A165472

481 P3d 953

Defendant was tried by jury for, among other offenses, unlawful delivery of methamphetamine, ORS 475.890. On that count, the only evidence was that defendant possessed an individual-user amount of methamphetamine, a pipe with residue, a scale, matches, and some baggies. At the close of the state's case, defendant moved for a judgment of acquittal on that count, contending that the evidence was insufficient to support a conviction for delivery. The trial court denied the motion, and the jury returned a verdict of guilty on all counts. On appeal, defendant assigns error to the court's denial of her motion and renews her contention that the evidence was insufficient to support a conviction for delivery. *Held*: The trial court erred in denying defendant's motion for judgment of acquittal on the delivery charge. The evidence presented at trial—that defendant possessed a user amount of drugs and some paraphernalia—made it speculative to infer that defendant had intended to transfer the drugs on her person, rather than use them, and it was therefore insufficient to support a conviction for delivery.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

Wells B. Ashby, Judge.

Erin J. Snyder Severe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Susan G. Howe, Assistant Attorney General.

Before Lagesen, Presiding Judge, and James, Judge, and Landau, Senior Judge.

LAGESEN, P. J.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

**LAGESEN, P. J.**

Defendant was tried by jury for, among other offenses, unlawful delivery of methamphetamine, ORS 475.890. On that charge, the only evidence was that defendant possessed an individual-user amount of methamphetamine, a pipe with residue, a scale, matches, and some baggies. At the close of the state's case, she moved for a judgment of acquittal on that count, contending that the evidence was insufficient to support a conviction for delivery. The trial court denied the motion, and the jury returned a verdict of guilty on all counts. On appeal, defendant assigns error to the court's denial of her motion and renews her contention that the evidence was insufficient to support a conviction for delivery.[1] Although the jury's verdict on each count was unanimous, she also contends, in a supplemental brief, that she is entitled to reversal of all convictions because the jury was instructed that it could return nonunanimous verdicts. We agree with defendant that the evidence is insufficient to support her conviction for delivery and reverse her conviction on that count, but we otherwise affirm.

Defendant was detained for involvement in the theft of two sets of earbuds and a media player from a Bi-Mart. Before detaining her, the Bi-Mart's loss prevention manager, Spencer, had observed defendant hand off the electronics to an accomplice who fled the scene on a bicycle. In Spencer's office, defendant denied having stolen anything and opened her backpack to prove it, revealing a small red pouch. Spencer called the police because of defendant's role in the theft, Officer Barber came, and defendant was arrested and taken to jail.

After defendant had been taken away, Spencer noticed that her red pouch had been left in his office, so he called Barber. Barber returned and looked inside the pouch.[2] It contained drugs and drug paraphernalia: a methamphetamine pipe with heavy residue on its inside rim; a small Ziploc baggie, covered with soot and containing .79 grams of methamphetamine; one larger sandwich bag; several other

---

[1] Defendant raises one additional assignment of error, but our disposition of her first obviates the need to address it.

[2] The lawfulness of Barber doing so is not at issue in this case.

small, clean Ziploc baggies; a small digital scale with white residue on it; and some matches. Defendant was indicted for unlawful delivery of methamphetamine, ORS 475.890, unlawful possession of methamphetamine, ORS 475.894 (2017),[3] and third-degree theft, ORS 164.043.

At defendant's jury trial, Barber testified that the amount of methamphetamine found in defendant's pouch was a "user amount," meaning that it was consistent with what an individual might use in a day. Barber explained that a user amount "[d]epends on the individual user. Some people maybe use a tenth of a gram a day. Some people use a gram a day. It just depends on the user." He elaborated that a "street level user amount" might be around half a gram or so, but that half a gram "would be on the steep side." He also testified that it is typically dealers, not people who are merely users, who carry digital scales with them. Dealers, Barber explained, would usually "buy a larger amount and then they'll split that amount up in small baggies and sell the individual portions." He added that sometimes those who only use (rather than sell) methamphetamine would come equipped with their own digital scales to purchase drugs, but that that was less common. Barber opined, based on his training and experience, that the contents of defendant's red pouch were consistent with someone who sells methamphetamine.

At the close of the state's case, defendant moved for judgment of acquittal on the delivery charge. The trial court denied the motion. It reasoned that the jury could conclude, based on defendant's possession of the methamphetamine and the materials commonly used to sell drugs, that defendant "sells relatively small amounts to other individual drug users." The jury returned a verdict of guilty on all three counts.

Defendant appeals. She assigns error to the trial court's denial of her motion for judgment of acquittal of her delivery charge. Defendant argues that the state's evidence—a user amount of methamphetamine, a sandwich

---

[3] Since the judgment was entered against defendant, ORS 475.894 has been amended by voter initiative (Measure 110, § 17 (2020)). Neither that count nor the amendment to the statute are at issue on appeal.

bag, a digital scale, a pipe, matches, and multiple small, clean baggies—is insufficient to support a conviction for delivery of methamphetamine. The state responds that defendant's possession of materials commonly used in connection with the transfer of controlled substances, along with a user amount that was "on the steep side," was sufficient evidence to support the jury's finding of guilt. The state points out that a large amount of a controlled substance is not required for a delivery conviction and also contends that defendant's possession of the tools of delivery alone was sufficient to support her conviction.

We review the denial of defendant's motion for judgment of acquittal "to determine whether, viewing the facts and reasonable inferences that may be drawn from those facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Borden*, 307 Or App 526, 528, 476 P3d 979 (2020) (internal quotation marks omitted). An inference is reasonable if

> "there is a reasonable probability that the conclusion flows from the proven facts. The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw. Still, an inference of guilt must be supported by the evidence and follow logically from it; stacking inference upon inference to the point of mere speculation is impermissible. In addition, an inference may be unreasonable if it requires too great an inferential leap."

*State v. Miller*, 196 Or App 354, 358, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005) (internal citations and quotation marks omitted).

ORS 475.890 provides that it is unlawful to deliver methamphetamine. "Delivery," for purposes of that statute, means "the actual, constructive, or attempted transfer *** of a controlled substance." ORS 475.005(8).

Here, the state's theory is that defendant committed delivery by engaging in the "attempted transfer" of methamphetamine. Relying on ORS 161.405(1), the statute setting forth the elements of the inchoate crime of attempt, we have held that a person is guilty of an "attempted" transfer—and

thus a completed "delivery"—"'when the person intentionally engages in conduct which constitutes a substantial step toward'" the transfer of a controlled substance. *State v. Boyd*, 92 Or App 51, 53-54, 756 P2d 1276, *rev den*, 307 Or 77 (1988) (quoting ORS 161.405(1)).[4] A "substantial step," for purposes

---

[4] Although defendant does not contend that we erred in *Boyd* when we—without any analysis of text, context, or legislative history—used the definition of the inchoate crime of attempt to define what "attempted transfer" means for purposes of ORS 475.005(8), there are reasons to question that conclusion. ORS 161.405 is not a definitional provision; it is a provision that delineates the substantive elements of the inchoate crime of attempt. Recognizing that, in recent cases involving other criminal statutes that use some form of the word "attempt" in defining the prohibited conduct, we have concluded that the legislature intended the word to have its ordinary meaning. For example, in *State v. Stockert*, 303 Or App 314, 319, 464 P3d 151, *rev den*, 367 Or 76 (2020), where we were called upon to determine what it meant to "attempt to take" wildlife in the wildlife statutes, we observed:

"Notwithstanding our approach to the construction of the Controlled Substances Act in *Boyd*—an approach that does not comport with the statutory construction methodology we would be required to apply were we confronted with the case today—we reject the parties' contentions that the word 'attempt' in ORS 496.004(10) refers to the inchoate crime of attempt.

"It is apparent from the context of the word that the legislature's intent was to define a completed crime that can be committed by conduct that is, in essence, a process. That is, as we further explain, the context demonstrates that the legislature intended to use the word 'attempt' in its ordinary sense to capture what it means to engage in the process of hunting, rather than in its legal sense of defining inchoate crime."

We reached a similar conclusion in *State v. Rapp*, 306 Or App 265, 274-75, 473 P3d 1126, *rev den*, 367 Or 291 (2020), where we held that the word "attempts" in ORS 811.540(1), which bars "attempting to elude a police officer," did not refer to the definition of the inchoate crime of attempt but, instead, referred to the ordinary meaning of the word.

Although, as noted, *Boyd*'s correctness is not at issue in this case, in *State v. Hubbell* (A170143), a matter currently pending before this court in which the parties' arguments implicate the meaning of the phrase "attempted transfer" in ORS 475.005(8), the court requested briefing addressing the following questions:

"(1) Is the approach in *Boyd* consistent with legislative intent, as evidenced by the text, context and, if relevant and available, legislative history of ORS 475.005(8)? If not, is *Boyd* 'plainly wrong' under the standards set forth in *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185, 1192 (2017)?

"(2) If *Boyd* was correct to look to the inchoate crime of attempt for the meaning of the word 'attempted' in ORS 475.005(8), does the inchoate crime of attempted delivery of a controlled substance exist in Oregon and, if so, what are its elements?

"(3) If the word 'attempted' in ORS 475.005(8) is not defined according to the inchoate crime of attempt, what definition of 'attempted' most accurately reflects legislative intent? Based on the definition you propose, how would that affect this case?"

Order of the Appellate Commissioner, *State v. Hubbell* (A170143) (Nov 30, 2020).

of ORS 161.405, is an act that is "strongly corroborative of the actor's criminal purpose" such that it "(1) advance[s] the criminal purpose charged and (2) provide[s] some verification of the existence of that purpose." *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991).

The state first argues that "defendant's possession of delivery tools qualifies as a substantial step" for purposes of ORS 161.405(1) and ORS 475.005(8) such that defendant need not have possessed any amount of drugs to support her conviction for delivery. According to the state's theory both below and on appeal, mere possession of the items used to deliver methamphetamine is enough for a reasonable juror to conclude that "defendant had taken a substantial step of being 'in the business' of selling methamphetamine."

The state is correct that there is no *per se* requirement that a defendant have drugs in her immediate possession to support a conviction for delivery of a controlled substance. The state is incorrect, however, that mere possession of a scale and baggies (things that could be used to deliver drugs) is sufficient to support a finding that the defendant engaged in "the actual, constructive or attempted transfer" of methamphetamine. For one, the statute does not criminalize being "in the business" of dealing methamphetamine. It criminalizes "the" (singular) "actual, constructive or attempted transfer" of methamphetamine. The use of the singular determinative "the" indicates that the legislature intended to criminalize particular singular acts of actually, constructively, or attempting to transfer controlled substances and, more to the point, intended to require the state to prove the existence of a particular actual, constructive, or attempted transfer.

Beyond that, we have never concluded that so little evidence—the mere possession of "tools of the trade"—could support a delivery conviction under ORS 475.890, and to do so here would unlawfully punish defendant for the status of being a drug dealer rather than for the act of transferring or attempting to transfer controlled substances.[5] The

_____

[5] We allow for the possibility that the possession of "the tools of the trade" might in some circumstances be sufficient to support a conviction for delivery, depending on what those tools were, how many were possessed, and the

legislature has not enacted a statute criminalizing the status of being or having been a drug dealer; it has enacted statutes criminalizing the particular conduct that might be said to make a person a drug dealer.

Finally, as for the cases that the state cites in support of its contention that it need not prove that defendant possessed any quantity of drugs to support a delivery conviction, none of those cases stand for the proposition that the defendant's possession of the tools of delivery, standing alone, was legally sufficient to support a finding that a defendant had engaged in an actual, constructive, or attempted transfer of controlled substances. *See State v. Pollock*, 189 Or App 38, 43-45, 73 P3d 297 (2003) (concluding that "offering to sell a controlled substance constitutes a substantial step toward a completed transfer of that substance," because "defendant's intent is explicit"); *State v. Shewell*, 178 Or App 115, 120, 35 P3d 1096 (2001), *rev den*, 334 Or 491 (2002) (finding that an amount of marijuana consistent with personal use, plus materials consistent with delivery of a controlled substance, were sufficient to support a conviction of delivery where the defendant was also observed with a large group of people around him and admitted to having sold drugs to two people earlier that day); *State v. Sargent*, 110 Or App 194, 198, 822 P2d 726 (1991) ("We conclude that, if a person solicits another to engage in conduct constituting an element of the crime of delivery, *e.g.*, to provide to the person a controlled substance for the purpose of distribution to third parties, the person has taken a substantial step toward committing the crime of attempted delivery[.]").

Perhaps thinking in terms not involving controlled substances can be helpful. If the legislature had criminalized the actual, constructive, or attempted transfer of, say, baked goods, would anyone think that the possession of mixing bowls and measuring cups sufficed to show a substantial step toward transferring a cake? Although it may not be a proper matter for judicial notice, common experience indicates that people possess many things that they do not use,

surrounding context; each case must be decided on its own evidence. Our point is that possession of clean baggies and a digital scale, standing alone, is not sufficient to support a finding that a person actually or constructively transferred, or attempted to transfer, controlled substances.

making it speculative to infer from the possession of certain tools, on its own, a substantial step toward using those tools to transfer something. Just as someone in the past may have been an avid baker who made and transferred lots of cakes using the tools of that trade of which they have retained possession, someone may have, in the past, been a drug dealer but may not have abandoned the tools with which they plied their craft. Possession of the tools of the drug trade such as baggies and scales, standing alone, does not allow for the nonspeculative inference that a person has taken a substantial step toward a particular transfer of methamphetamine or another controlled substance.

Having rejected the state's argument that possession of the tools of the trade, standing alone, is sufficient to prove the attempted transfer of methamphetamine, we consider whether the record, viewed in its entirety, allows for the nonspeculative inference that defendant took a substantial step toward the transfer of methamphetamine. In conducting our examination, we keep in mind both that "an inference of guilt must be supported by the evidence and follow logically from it," *Miller*, 196 Or App at 358, and that a substantial step must strongly corroborate and verify an actor's criminal purpose, *Walters*, 311 Or at 85.

Here, although defendant possessed a quantity of methamphetamine that *could* have been sold, the jury's inference that defendant intended to sell it was speculative and did not logically follow from evidence that verified defendant's criminal purpose. Defendant possessed only a small quantity of methamphetamine that is consistent with personal use and that was not packaged separately for sale. As a result, it is not inferable from defendant's possession of the methamphetamine, alone, that defendant intended to transfer it or had otherwise taken a substantial step toward transferring.

That defendant possessed tools associated with the drug trade does not make the inference less speculative on this record. That is because there is no other evidence suggesting that defendant had the present intent to transfer the methamphetamine in her possession or had used those tools to transfer methamphetamine in the past. The state

introduced no evidence about how defendant came into possession of the baggies and scale in the red pouch or how she used them. The state introduced no evidence of nearby customers or any customers. The state introduced no evidence that defendant made statements indicating that she intended to transfer the drugs or had transferred them in the past. The evidence that defendant possessed matches and a methamphetamine pipe covered in heavy drug residue, and that the baggie containing the drugs was covered in black soot, points toward possession for personal use, not transfer.

Those circumstances rendered the jury's inference that defendant had intended to transfer the drugs on her person, rather than use them, too speculative to support a conviction for delivery. That is, taken in the light most favorable to the state, the jury's inference of defendant's guilt beyond a reasonable doubt did not logically follow from the evidence. *See Miller*, 196 Or App at 358. Under these circumstances, the evidence lacked "some verification of the existence of [defendant's] purpose" to transfer controlled substances from one person to another. *Walters*, 311 Or at 85. We therefore conclude that the trial court erred in denying defendant's motion for judgment of acquittal and reverse defendant's conviction for delivery.

One issue remains. In a supplemental brief, defendant assigns error to the court's instruction that only 10 jurors needed to find defendant guilty to convict her, although she acknowledges that the jury's verdict on each count was unanimous. That claim of error is foreclosed by *State v. Flores Ramos*, 367 Or 292, 294, 334, 478 P3d 515 (2020) (holding that error in instructing the jury that it could return nonunanimous guilty verdicts did not require reversal of convictions rendered by unanimous guilty verdicts), and *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020) (same).

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.